UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                              :

JOHN IMHOF,                            :

                                 :

                  Plaintiff,        :

                                 :           23 Civ. 1880 (JPC)

           -v-                      :

                                 :        OPINION AND ORDER

                                 :

NEW YORK CITY HOUSING AUTHORITY, DANIEL  :
SHERROD, RICHARD MORRISON, and ANDREW  :
LUPIN,                               :

                                 :

                  Defendants.     :

                                 :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiff John Imhof brings this action against Defendants New York City Housing
Authority ("NYCHA"), Richard Morrison, Andrew Lupin (collectively with NYCHA and
Morrison, the "NYCHA Defendants"), and Daniel Sherrod, alleging workplace discrimination in
violation of the Americans with Disabilities Act of 1990 ("ADA"), the New York State Human
Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  The
NYCHA Defendants have moved for partial dismissal of the Amended Complaint, seeking
dismissal for failure to state a claim of the fifth cause of action for associational disability
discrimination, the seventh cause of action for a preliminary injunction, and all claims asserted
against Lupin.  Sherrod, represented by counsel for the United States of America, also moves to
dismiss the four causes of action under the NYCHRL against him for failure to state a claim or
alternatively for lack of subject matter jurisdiction.  For the following reasons, Sherrod's motion
is denied without prejudice and he may move for summary judgment after completion of limited
discovery as outlined below.  The NYCHA Defendants' motion is granted to the extent that the

Court dismisses the fifth cause of action as asserted against those Defendants and the seventh cause of action, and the motion is otherwise denied.

## I. Background

### A.    Facts[1]

Imhof, an architect, had worked for the New York City Police Department ("NYPD") before taking a job with NYCHA in the fall of 2021. Am. Compl. ¶¶ 18-19. On July 7, 2021, Vito Mustaciuolo, who at the time was NYCHA's Chief Operating Officer ("COO"), made Imhof a job offer entailing "$195,000 as a base salary, with benefits," and a formal offer letter from NYCHA followed about two weeks later. *Id.* ¶¶ 25-26. On October 4, 2021, Imhof began working for NYCHA as "Vice President of Support Services and as a permanent employee of the City of New York in the civil service title of Administrative Architect." *Id.* ¶ 19.

Shortly thereafter, with COVID-19 cases rising in December 2021, "Mustaciuolo directed Imhof to work fully from home because [Imhof] has high blood pressure (a COVID at-risk factor), his wife is in remission from cancer, and his son has three congenital heart defects." *Id.* ¶ 29. Then, as alleged, "[o]n January 3, 2022, Mustaciuolo told Imhof he should file a formal request for a reasonable accommodation" to work from home "to avoid exposure in the office" "because Imhof has a COVID high risk factor." *Id.* ¶¶ 30-31. According to Imhof, Mustaciuolo was forced

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Amended Complaint, Dkt. 42 ("Am. Compl."), as well as documents incorporated by reference in the Amended Complaint and other documents susceptible to judicial notice. *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor"); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (noting that, on a motion to dismiss, courts "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit").

to resign on January 4, 2022.  *Id.* ¶ 34.  A week after Mustaciuolo's resignation, on January 11, Imhof submitted a work-from-home request.  *Id.* ¶ 35.

On February 2, 2022, Imhof requested an update on his remote work request.  *Id.* ¶ 40. Sherrod, who by this time had succeeded Mustaciuolo as NYCHA's COO, *id.* ¶ 37, was aware of that request, *id.* ¶ 42.  On February 9, 2022, Imhof's request was denied, with the cited reasons being that Imhof's position as a Vice President must be onsite and that it would pose an "undue hardship," presumably to NYCHA, for Imhof to work remotely.  *Id.* ¶¶ 42, 44.  Imhof maintains, however, that his job duties had not changed since December 2021, when Mustaciuolo had directed him to work from home.  *Id.* ¶ 45.  He also alleges that this accommodation denial, as well as others that followed, stated that "employees are only eligible to apply for a reasonable accommodation based on their own health condition or disability."  *Id.* ¶ 46.  On February 10, 2022, Imhof emailed Sherrod's Chief of Staff, explaining his need for a remote work accommodation.  *Id.* ¶ 47.

On February 14, 2022, Imhof was reassigned to the position of project manager, effective the following day.  *Id.* ¶¶ 48, 58.  This new position "came with a significant salary reduction, a reduction of three managerial levels (equivalent to at least six years of employment), loss of title, loss of a private office, and loss of a company car and paid commuting expenses."  *Id.* ¶ 48. Imhof's first meeting with Sherrod followed this reassignment.  *Id.* ¶ 50.[2]  During that meeting, which apparently occurred over the telephone, Sherrod told Imhof that the reassignment "was not a disciplinary action."  *Id.* ¶ 51.  Imhof responded by telling Sherrod "that if he is demoted, he will be suing NYCHA, to which Sherrod responded[,] 'Well that's great' and 'if you want to sue, go

---

[2] Imhof does not allege when his initial meeting with Sherrod occurred, alleging only that his "abrupt" demotion "came before [his and Sherrod's] first one on one meeting, which was supposed to occur just two days later."  Am. Compl. ¶ 50.

ahead, knock yourself out. Anything else?' and abruptly ended the call." *Id.* At some unspecified point, Sherrod also told Imhof that "he had 'talked it out' with Human Resources, to which Imhof responded[,] 'I don't understand how this can just happen.'" *Id.* ¶ 52. A Human Resources employee then "cut in and said 'we have a right under the civil service to realign titles [based on operational needs] and Sherrod is exercising that right.'" *Id.* ¶ 53 (alteration in original) (emphasis omitted). Imhof alleges, rather, that he "was only demoted and only had his title changed and salary cut because he had a disability that required he work from home." *Id.* ¶ 56. He further alleges that "[h]is former position remained vacant" "for months" following his reassignment "but was eventually filled because of operational needs." *Id.* ¶¶ 58-59. Imhof alleges that, a few months after his demotion, Sherrod was reassigned and no longer works at NYCHA. *Id.* ¶ 91.

Following this transfer to project manager, Imhof's "work became mentally and emotionally taxing and, so, he continued to request an accommodation." *Id.* ¶ 60. According to Imhof, since at least the time of this reassignment, it has been NYCHA's policy to allow managers—which Imhof alleges himself to have been as project manager—"to work from home 3 days per week, simply by virtue of them being managers, without any medical conditions at all." *Id.* ¶ 63; *accord id.* ¶¶ 67-68. Thus, at some unspecified point shortly following his reassignment, Imhof asked his new supervisor, Morrison, for permission to work from home three days a week; although the allegations do not state so explicitly, Imhof's pleading implies that he was allowed to work from home two days a week when he submitted this request. *See id.* ¶¶ 64, 66. But, "after notifying Defendants about his and his family's disabilities, Imhof was restricted to just two days per week" of working from home. *Id.* ¶ 65.

On February 18, 2022, Imhof submitted another request for an accommodation, presumably via email, this time requesting permission to work from home four days a week:

> I am reapplying for a reasonable accommodation to work from home, as instructed, since there has been a change in circumstances. I am no longer a Vice President, nor do I work for Operations Support Services and I do not work for emergency services. I have been reassigned to CPD as just a Project Manager. The essential functions of my job could easily be carried out remotely, and I do not have a staff that I supervise. I will of course make myself physically available and present when needed, but the remainder (and almost all) of my time is spent at a single computer, and the meetings I have will rarely be in person. I am only requesting to work from home 4 days per week since the staff in my new department currently work from home on an alternating schedule on these days, with all staff in on Wednesdays. I am requesting only these 4 days, to be sensitive to the needs of my new department. I respectfully request the approval, since I have very high blood pressure and am overweight, which both have been proven (by the CDC and other sources) to place people at a higher risk of severe illness from Covid-19. In addition I live with my son who has three congenital heart defects and my wife who is in remission from cancer and is still undergoing treatments. I have attached a recent doctor's note to this email.

*Id.* ¶ 71. Imhof followed up on this request on March 17, 2022, and the request was denied on April 1, 2022. *Id.* ¶¶ 75-76. Imhof alleges that the explanation for the denial was that he "was expected to attend eBuilder training in person, as a mandatory aspect of his employment." *Id.* ¶ 77. But, he alleges, this rationale was "untrue" because "all eBuilder training was done via video and remotely." *Id.* ¶ 78. Furthermore, he alleges that the eBuilder training "was finite in time" and his requested accommodation extended beyond the duration of that training. *Id.* ¶ 79.

Around this same time, Imhof was diagnosed with multiple mental health ailments. First, Imhof was diagnosed with "Major Depressive Disorder," which he contends "began in February of 2022, influenced by [his] reassignment and salary reduction." *Id.* ¶ 74. Second, in April 2022, "Imhof developed Generalized Anxiety Disorder . . . and was in monthly therapy sessions with his Psychiatrist and weekly therapy sessions with his Psychologist, and was prescribed daily medication for his Depression, which would later be increased in dosage by his Psychiatrist to the maximum dosage allowable for that medication." *Id.* ¶ 81.

On May 9, 2022, Imhof reapplied for an accommodation, saying, "I am now submitting a request for a Reasonable Accommodation for two disabilities I have been recently diagnosed with,

by two different mental health professionals, for disabilities I have acquired as a result of my employment and treatment at the New York City Housing Authority." *Id.* ¶ 84.  The request was denied on May 31, 2022.  *Id.* ¶ 85.  In what Imhof refers to as "another denial," but which actually seems to refer to the denial of May 31, 2022, Imhof was told, "You have provided medical documentation that indicates that being in the workplace causes you embarrassment, stress, anxiety, and depression, and makes a recommendation to work from home.  However, that documentation does not state your conditions preclude you from working in the office." *Id.* ¶ 88 (emphasis omitted).  After receiving that explanation, on June 6, 2022, Imhof's doctors "sent notes to NYCHA explaining that he should not be working in the office." *Id.* ¶ 89.

Imhof then alleges that between "[b]etween June 6, 2022 and August 1, 2022 Imhof continued to ask for a response to his accommodation requests, but was met with silence." *Id.* ¶ 90.  Imhof presumably submitted a fourth accommodation request at some point, as he next alleges that he submitted a "fifth" accommodation request on July 21, 2022.  *Id.* ¶ 92.  On August 3, 2022, that request was denied, with the explanation that "Imhof's Generalized Anxiety Disorder was 'episodic, and not constant.'" *Id.* ¶ 93.  According to Imhof, "NYCHA acknowledged that the anxiety was brought on by being in the workplace, that Imhof was performing well while remote, but [stated] that he was still required to return in person." *Id.* ¶ 94.  NYCHA further explained that while at the office, Imhof would be allowed to take "additional unpaid breaks," such as "tak[ing] a walk," when he felt that his work "ha[d] triggered an episode of anxiety." *Id.*[3]

Finally, although the Amended Complaint does not allege that Imhof submitted a subsequent request for an accommodation, Lupin informed Imhof via email on September 6, 2022

---

[3] According to Imhof, NYCHA "never commented on [Imhof's] Major Depressive Disorder or high blood pressure." Am. Compl. ¶ 96.

that "he would be receiving a reasonable accommodation." *Id.* ¶ 111. As alleged, Lupin "is involved with and directs Defendant NYCHA to provide accommodations for Imhof." *Id.* ¶ 113.[4] "Thereafter, Imhof was required to reapply for a reasonable accommodation every three (3) months." *Id.* ¶ 112. Thus, "[o]n February 13, 2023, Imhof requested an extension of his accommodation," *id.* ¶ 114, and roughly two weeks later, on February 28, 2023, the request was granted, approving an accommodation for Imhof through May 26, 2023, *id.* ¶ 115.

Shortly after receiving that extension, on March 3, 2023, Imhof filed his original Complaint in this matter. Dkt. 1. On May 15, 2023, he "reapplied for a reasonable accommodation." Am. Compl. ¶ 121. Imhof received a response to that request on July 18, 2023, *id.* ¶ 122, even though allegedly "Defendant NYCHA and Defendant Lupin [were] obligated to respond to Imhof's request within 30 days," *id.* ¶ 123. Imhof alleges, "[u]pon information and belief, [that] Defendant Lupin directed Defendant NYCHA not to give Imhof his reasonable accommodation in a timely manner to harass and retaliate against him." *Id.* ¶ 124. "In the alternative," he alleges that "Defendants, including Defendant Lupin, failed to diligently engage in any cooperative dialogue with Imhof about his accommodation." *Id.* ¶ 125. "All of Defendants [sic] responses to Plaintiff's requests for an accommodation have been virtually the same as the initial approval by Defendant Lupin, indicating that he remains involved in the accommodation approval or denial process." *Id.*

---

[4] Imhof alleges that "Lupin is General Counsel for Defendant NYCHA," Am. Compl. ¶ 110, a job description that seems plainly incorrect. According to NYCHA's website, David D. Rhode has been the agency's Executive Vice President for Legal Affairs and General Counsel since September 19, 2022. *See* https://www.nyc.gov/site/nycha/about/executive-team/david-rohde.page (last visited July 10, 2024). Before that, Lisa Bova-Hiatt, who is now the agency's Chief Executive Officer, had been the General Counsel since February 2020. *See* https://www.nyc.gov/site/nycha/about/executive-team/lisa-bova-hiatt.page (last visited July 10, 2024); *see also* Dkt. 65 ("NYCHA Motion") at 6 n.3 ("Contrary to Plaintiff's allegations, Defendant Lupin is NYCHA's in-house attorney supervising this action; he is not NYCHA's General Counsel.").

¶ 116.  "As such," Imhof alleges that "Lupin is an aider and abettor in the discrimination and is complacent [sic] with it."  *Id.* ¶ 127.

## B.     Procedural History

In the original Complaint, filed on March 3, 2023, Imhof named NYCHA, Sherrod, and Morrison as Defendants.  Dkt. 1.  On April 11, 2023, NYCHA and Morrison answered the Complaint.  Dkt. 14.  In their Answer, NYCHA and Morrison denied in all material respects the allegations in the Complaint and interposed twenty-six affirmative defenses, including that the Complaint failed to state a claim upon which relief may be granted.  *Id.* at 15-19.  On July 31, 2023, Imhof sought leave to file an amended complaint, Dkt. 40, which the Court granted on August 3, 2023, Dkt. 41.  Imhof filed the Amended Complaint on August 11, 2023, adding Lupin as a Defendant.  Dkt. 42.  The Amended Complaint asserts seven causes of action: (1) disability discrimination against NYCHA under the ADA, the NYSHRL, and the NYCHRL, and against Lupin, Sherrod, and Morrison under the NYCHRL, *id.* ¶¶ 128-144; (2) retaliation against NYCHA under the ADA, the NYSHRL, and the NYCHRL, and against Sherrod, Lupin, and Morrison under the NYCHRL, *id.* ¶¶ 145-162; (3) failure to engage in a cooperative dialogue against NYCHA and Lupin under the NYCHRL, *id.* ¶¶ 163-174; (4) hostile work environment against NYCHA under the ADA, the NYSHRL, and the NYCHRL, and against Sherrod, Lupin, and Morrison under the NYCHRL, *id.* ¶¶ 175-186; (5) associational disability discrimination given the medical conditions of Imhof's wife and son against NYCHA under the ADA, NYSHRL, and the NYCHRL, and against Sherrod and Morrison under the NYCHRL, *id.* ¶¶ 187-203; (6) promissory estoppel against

8

NYCHA, *id.* ¶¶ 204-214; and (7) a request for a preliminary injunction "to grant Plaintiff an accommodation" under the ADA, *id.* ¶¶ 215-228.[5]

On October 2, 2023, the NYCHA Defendants filed their motion for partial dismissal, seeking dismissal of the fifth cause of action for associational disability discrimination as asserted against them, the seventh cause of action for a preliminary injunction, and all causes of action against Lupin. Dkts. 61, 64-65. On October 16, 2023, Sherrod, appearing with the United States Attorney's Office as counsel, filed his motion to dismiss. Dkts. 66, 67 ("Sherrod Motion"), 68-70. Maintaining that at all relevant times he was an employee of the U.S. Department of Housing and Urban Development[6] and detailed to NYCHA, Sherrod argues that the first, second, fourth, and fifth causes of action under the NYCHRL against him must be dismissed as preempted by federal employment discrimination remedies. Sherrod Motion at 1, 3-5. In the alternative, Sherrod argues that any claims against him would be subject to the Federal Tort Claims Act, for which the United States would be the sole proper defendant and for which subject matter jurisdiction is lacking. *Id.* at 1, 5-9. On November 6, 2023, Imhof filed his opposition to the NYCHA Defendants' motion, Dkt. 70 ("Imhof NYCHA Opp."), and on November 20, 2023, Imhof filed his opposition to Sherrod's motion, Dkt. 71 ("Imhof Sherrod Opp."). On November 29, 2023, the NYCHA Defendants filed their reply, Dkt. 72 ("NYCHA Reply"), and on December 20, 2023, Sherrod filed his reply, Dkt. 77 ("Sherrod Reply").

---

[5] At an initial case management conference held on August 24, 2023, the Honorable Jennifer E. Willis, to whom this case has been referred for general pretrial supervision, granted Defendants' request to stay discovery. *See* Dkt. 53 at 1.

[6] In support of his asserted federal employment, Sherrod submitted a certification from Damian Williams, the U.S. Attorney for the Southern District of New York. Dkt. 68 ("U.S. Attorney Certification").

## II.  Standard of Review

### A.      Federal Rule of Civil Procedure 12(b)(6)

Both the NYCHA Defendants and Sherrod have moved to dismiss certain of Imhof's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  These "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

### B.      Federal Rule of Civil Procedure 12(b)(1)

Sherrod seeks to be substituted by the United States and moves to dismiss under Federal Rule of Civil Procedure 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Courts take the uncontroverted facts of the complaint as true, but "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration in original) (internal quotation marks omitted).

### III.  Discussion

**A.      Sherrod's Motion**

Sherrod seeks dismissal of the claims against him—*i.e.*, the first, second, fourth, and fifth causes of action under the NYCHRL—for failure to state a claim, arguing that they are preempted by federal employment discrimination remedies.  Sherrod Motion at 3-5.  Imhof responds that his claims against Sherrod are not preempted because he (Imhof) is not a federal employee.  Imhof Sherrod Opp. at 5-9.  Sherrod, in turn, maintains that only his own federal employment status matters in this analysis, *see* Sherrod Reply at 3, and points to a certification from the U.S. Attorney for the Southern District of New York, in which the U.S. Attorney states:

> (i) that during the relevant period, Sherrod was an employee of the United States Department of Housing and Urban Development; and (ii) that Sherrod was acting within the scope of his federal employment for purposes of the New York City Human Rights Law claims asserted against him in the First Amended Complaint filed in this lawsuit.

U.S. Attorney Certification at 1.

The question of Sherrod's federal employment status is relevant to Sherrod's argument that Imhof's claims are preempted by federal employment discrimination remedies because "permitting plaintiffs who have allegedly been discriminated against by federal supervisors to circumvent the 'careful blend of administrative and judicial enforcement powers' of federal employment discrimination remedies in favor of remedies available through 'less demanding statutes' would entirely upend the administrative policy goals underlying the United States' waiver of sovereign immunity through federal employment discrimination statutes."  Sherrod Reply at 2 (quoting *Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 833 (1976)); *accord* Sherrod Motion at 3-4; *see Xu v. City of New York*, No. 08 Civ. 11339 (DLC), 2010 WL 3060815, at *2 (S.D.N.Y. Aug. 3, 2010) (dismissing employment discrimination claims under state and city law brought by a city

employee against federal employers who were her supervisors, explaining that "the comprehensive administrative and statutory scheme created by Congress when it extended the United States' waiver of sovereign immunity to suits brought by certain federal employees under Title VII is intended to foreclose all other suits against the federal government for employment discrimination" (citing *Brown*, 425 U.S. at 832-34)).

The only basis for establishing Sherrod's federal employment, however, is the U.S. Attorney's certification submitted in support of Sherrod's motion to dismiss. The Amended Complaint does not plead that Sherrod was a federal employee. And that certification, of course, is outside of the pleadings. Sherrod asks that, to the extent the Court decides to consider the certification in connection with the Rule 12(b)(6) portion of his motion, the Court convert that portion to a motion for summary judgment under Federal Rule of Civil Procedure 56. Sherrod Reply at 1 n.1. "If the Court decides to convert [a] motion to dismiss into a motion for summary judgment, the non-moving party must be given a 'reasonable opportunity to meet facts outside the pleadings.'" *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 291 (E.D.N.Y. 2015) (quoting *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985)), *aff'd*, 670 Fed. App'x 731 (2d Cir. 2016); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). Accordingly, on June 21, 2024, the Court directed Imhof to advise "whether he wishes to take discovery on the sole question of whether Sherrod was a federal employee during all times relevant for the claims against Sherrod in this action." Dkt. 78 at 2. On June 27, 2024, Imhof expressed his desire to take discovery. Dkt. 79. The Court therefore dismisses without prejudice Sherrod's motion to dismiss,

and orders limited discovery on the issue of whether Sherrod was a federal employee at the time of his alleged dealings with Imhof at NYCHA.[7]  Following that limited discovery, Sherrod may move for summary judgment.

The Court pauses briefly to provide some guidance on the permissible scope of this limited discovery.  Based on his June 27 letter, Imhof appears to envision more expansive discovery than necessary to resolve the question of whether Sherrod was a federal employee at the time of his alleged conduct.  *See* Dkt. 79.  In particular, Imhof previews that he seeks "discovery into what entities paid Defendant Sherrod during the relevant time period as described in the pleadings," and maintains that such documents "may be held by [NYCHA]."  *Id.* at 1.  He then makes the conclusory statement, without any citation in support: "If Defendant Sherrod was holding himself out as a NYCHA employee, was being hailed as a NYCHA employee, and [was] being paid as a NYCHA employee, then he was a NYCHA employee."  *Id.*

Yet, if at the relevant time Sherrod was on detail from the U.S. Department of Housing and Urban Development, the entity that paid Sherrod may not be relevant to the question of whether he was a federal employee.  Under the Intergovernmental Personnel Act,

> An employee of a Federal agency assigned to a State or local government under this subchapter is deemed, during the assignment, to be either--
>
> (1) on detail to a regular work assignment in his agency; or
>
> (2) on leave without pay from his position in the agency.
>
> An employee assigned either on detail or on leave without pay remains an employee of his agency. . . .

---

[7] As it pertains to Sherrod, the Court thus lifts the stay of discovery imposed by Judge Willis, who will supervise that discovery.  Discovery regarding the other Defendants may proceed as directed by Judge Willis following this Opinion and Order.

5 U.S.C. § 3373(a).  Citing this statutory language, Sherrod takes the position "that the only documents within the scope of discovery contemplated by the Court are the Intergovernmental Personnel Agreement governing his assignment to NYCHA and personnel documents sufficient to show that he was continuously employed by the U.S. Department of Housing and Urban Development during his detail to NYCHA and at all times relevant to Plaintiff's allegations."  Dkt. 80 at 1.

As the Court has referred this matter to Judge Willis for general pretrial supervision, Judge Willis will oversee this limited discovery and address any disputes that may arise.  This Court emphasizes to the parties, however, that at least at this stage, discovery involving Sherrod only concerns whether he was a federal employee under the law at the time of the relevant allegations, a determination which, as noted above, may not be impacted by whether NYCHA paid Sherrod's salary if he was "on detail" from the U.S. Department of Housing and Urban Development at the time.  Upon completion of that discovery, Sherrod may file a motion for summary judgment.[8]

---

[8] The Court does not reach Sherrod's alternative argument that he should be substituted by the United States of America, *see* 28 U.S.C. § 2679(d)(1), and that Imhof's claims "are subject to the exclusive remedy provision of the FTCA, the United States is the sole proper defendant under the FTCA, and Imhof has not exhausted his administrative remedies as required by that statute." Sherrod Motion at 5.  The Court notes, however, that Imhof only brings employment discrimination-related claims against Sherrod and has not asserted any claims grounded in tort. *See Rivera v. Heyman*, 157 F.3d 101, 105 (2d Cir. 1998) ("The certification procedure of § 2679(d)(1) applies only to tort claims, not to discrimination claims under the Human Rights Laws . . . .").

**B.      The NYCHA Defendants' Motion**

The NYCHA Defendants move to dismiss the fifth and seventh causes of action for failure

to state a claim, as well as all claims against Lupin because of Imhof's supposed failure to allege

Lupin's involvement in any of the alleged unlawful acts.[9]

**1.   Fifth Cause of Action: Associational Disability Discrimination**

In the fifth cause of action, Imhof alleges that he suffered adverse employment actions at

least in part on account of Defendants' knowledge of his wife's and son's health conditions.  *See*

Am. Compl. ¶¶ 187-203; *see also id.* ¶ 29 (alleging that Imhof's "wife is in remission from cancer,

and his son has three congenital heart defects").  The NYCHA Defendants argue that this cause of

action must be dismissed because Imhof fails to plead facts establishing that he suffered any

adverse employment action taken under circumstances giving rise to an inference of discriminatory

intent.  NYCHA Motion at 12-14.  As Imhof presses this cause of action under both the ADA

(against NYCHA) and the NYCHRL (against NYCHA and Morrison), the Court considers each

statute in turn.[10]

---

[9] As a threshold matter, Imhof argues that the NYCHA Defendants cannot now move to the dismiss causes of action in the Amended Complaint after they opted to answer the original Complaint.  *See* Imhof NYCHA Opp. at 7-8.  In reply, the NYCHA Defendants argue that their Answer to the original Complaint does not preclude them from now moving for dismissal.  The Court agrees.  *See Bao Guo Zhang v. Shun Lee Palace Rest., Inc.*, No. 17 Civ. 840 (VSB), 2021 WL 634717, at *5 (S.D.N.Y. Feb. 16, 2021) (explaining that answering an original complaint does not bar an argument in a subsequent motion to dismiss of an amended complaint).

[10] The fifth cause of action also alleges associational disability discrimination against NYCHA under the NYSHRL.  Am. Compl. ¶ 202. In response to the NYCHA Defendants' argument that associational discrimination is not cognizable under the NYSHRL, NYCHA Motion at 11, Imhof withdrew his NYSHRL-based associational discrimination claim, Imhof NYCHA Opp. at 6-7 n.2 ("While Plaintiff believes that the statutory language of the NYSHRL *could* allow for such a claim, Plaintiff will withdraw those NYSHRL claims as the recovery would be duplicative of any recovery under either the ADA or the NYCHRL, and raising this issue over statutory language, in this case, would be a waste of the Court's resources.").  The Court therefore dismisses the fifth cause of action to the extent asserted under the NYSHRL.

### i.     ADA

The ADA prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."  42 U.S.C. § 12112(b)(4).  To adequately plead a claim under the ADA for such so-called associational disability discrimination, a plaintiff must allege:

> 1) that she was qualified for the job at the time of an adverse employment action; 2) that she was subjected to adverse employment action; 3) that she was known at the time to have a relative or associate with a disability; and 4) that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

*Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 467-68 (2d Cir. 2019).  The Second Circuit has identified three fact patterns that can give rise to the inference that a relative's or an associate's disability was a determining factor in the adverse employment decision:

> 1) expense, in which an employee suffers adverse action because of his association with a disabled individual covered by the employer's insurance, which the employer believes (rightly or wrongly) will be costly; 2) disability by association, in which the employer fears that the employee may contract or is genetically predisposed to develop the disability of the person with whom he is associated; and 3) distraction, in which the employer fears that the employee will be inattentive at work due to the disability of the disabled person.

*Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 432 (2d Cir. 2016) (internal quotation marks omitted).  While the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), ultimately governs such claims if they reach the summary judgment phase, a court considering a motion to dismiss an associational disability discrimination claim should "not consider potential nondiscriminatory reasons for termination," but instead "examine the complaint to determine whether it contains at least minimal support for the proposition that the

employer was motivated by discriminatory intent." *Kelleher*, 939 F.3d at 470 (internal quotation marks omitted).

The NYCHA Defendants do not dispute that Imhof has adequately pleaded the first element of an associational disability discrimination claim—*i.e.*, his qualification for the job.  Nor do the NYCHA Defendants appear to contest that Imhof sufficiently pleaded the third element—*i.e.*, that they were aware that his family members suffered from disabilities at the relevant time.  *See generally* NYCHA Motion at 9-14; *see also* Am. Compl. ¶¶ 64, 71, 190.  But there does appear to be disagreement on the other two elements: what, if any, adverse employment action Imhof suffered and whether any adverse employment action occurred under circumstances raising a reasonable inference that Imhof's wife's or son's disability was a determining factor in the employment decision.

The NYCHA Defendants appear to acknowledge that Imhof experienced adverse employment action when he was reassigned to the position of project manager in February 2022. *See* NYCHA Motion at 12.  Imhof's opposition brief takes the position that he also experienced "[t]wo adverse employment actions [that] stem directly from the associated disability claims: i) Plaintiff was denied reasonable accommodations to work from home, and ii) Plaintiff was denied opportunities to work from home as a matter of right."  Imhof NYCHA Opp. at 9.  Presumably, the former refers to the denial of Imhof's request for an accommodation allowing him to work remotely before his February 2022 reassignment to project manager, while the latter refers to the denials of his remote work requests following that reassignment and thus at a time when he claims that he held a position that entitled him to work from home three days each week under NYCHA policy.

The Second Circuit has held that "[t]o qualify as an adverse employment action [under the ADA], the employer's action toward the plaintiff must be materially adverse with respect to the terms and conditions of employment." *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). The Supreme Court recently held in the context of Title VII, however, that to establish an adverse employment action, a plaintiff "need show only some injury respecting her employment terms or conditions. The transfer must have left her worse off, but need not have left her significantly so." *Muldrow v. City of St. Louis, Missouri*, 144 S. Ct. 967, 977 (2024). The ADA's standard for adverse employment action mirrors that of Title VII. *Richards v. Dep't of Educ. of City of New York*, No. 21 Civ. 338 (LJL), 2022 WL 329226, at *8 (S.D.N.Y. Feb. 2, 2022) ("[T]he definition of an adverse employment action under Title VII is the same as under the ADA." (citations omitted)). The Second Circuit has yet to opine on whether its standard for adverse employment action under the ADA has changed post-*Muldrow*, likely largely due to the fact that the Supreme Court decided *Muldrow* just a few months ago on April 17, 2024. Regardless, the Court's determination as to whether Imhof sufficiently alleged adverse employment actions for purposes of his associational disability discrimination claim would be the same under either standard.

Imhof has sufficiently pleaded two adverse employment actions for purposes of the second prong of the associational disability discrimination analysis. First, and as the NYCHA Defendants seemingly acknowledged, Imhof's reassignment to a new position, based on the allegations in the Amended Complaint, constituted an adverse employment action. According to Imhof, the new position "was clearly a demotion, came with a significant salary reduction, a reduction of three managerial levels (equivalent to at least six years of employment), loss of title, loss of a private office, and loss of a company car and paid commuting expenses." Am. Compl. ¶ 48. As alleged,

this was a materially adverse change in the terms and conditions of Imhof's employment and thus amounted to an adverse employment action even under the more stringent pre-*Muldrow* test.

The first purported adverse employment action advanced by Imhof falls short, however. The failure of NYCHA to provide Imhof with an accommodation by allowing him to work from home, prior to his transfer in February 2022, was not an adverse action for purposes of an associational disability discrimination claim. While other provisions of the ADA might cover Imhof's allegations that Defendants failed to provide a reasonable accommodation for his own disability—and he indeed alleges as much in other causes of action—for purposes of an associational disability discrimination claim under the ADA, Defendants were under no obligation to provide Imhof with a reasonable accommodation to work from home so he could care for his mother or son. *See  Toombs v. New York City Hous. Auth.*, No. 16 Civ. 3352 (LTS), 2017 WL 1169649, at *6 (S.D.N.Y. Mar. 27, 2017) ("As the ADA's bar on associational discrimination does not require that employers provide employees such as [Plaintiff], who are not themselves disabled, with reasonable accommodations, Defendants were under no obligation to provide Plaintiff with one."); *Pennington v. Wal-Mart Stores E., LP*, No. 7:12-CV-860-SLB, 2014 WL 1259727, at *5 (N.D. Ala. Mar. 26, 2014) ("[F]ederal law does not require employers to make reasonable accommodations for employees to care for their disabled relatives." (citing *Magnus v. St. Mark United Methodist Church*, 688 F.3d 331, 337 (7th Cir. 2012)) (cited in *Graziadio*, 817 F.3d at 433); *cf. Bertuzzi v. Copiague Union Free Sch. Dist.*, No. 17 Civ. 4256 (JS), 2023 WL 6211002, at *6 (E.D.N.Y. Sep. 25, 2023) ("While courts may consider the underlying conduct of an alleged failure to accommodate, a failure to accommodate, by itself, is not sufficient for purposes of establishing an adverse employment action."). Imhof has alleged no additional underlying conduct

relating to that initial denial of a request for an accommodation to allow the conclusion that he suffered an adverse employment action.

The analysis is different, however, for Imhof's allegation that he was denied permission to work from home for three days a week after his reassignment to project manager. This alleged action is not a denied accommodation like the one discussed immediately above. Rather, Imhof alleges that the denials of his early and mid-2022 requests for three days of remote work per week violated a NYCHA policy that permitted all managers to work remotely with that frequency. *See* Am. Compl. ¶¶ 63-69. In other words, unlike the remote work request that was denied as an accommodation prior to his reassignment, Imhof alleges that following his transfer to project manager, he was denied an entitlement that now had become a term of his employment. He further alleges that around this time, COVID-19 cases were rising, and that he suffers from "high blood pressure (a COVID at-risk factor)." *Id.* ¶¶ 28-29. Therefore, the allegation that the NYCHA Defendants prohibited Imhof from working remotely three days each week in contravention of NYCHA policy, especially in the context of rising COVID cases and Imhof's individual risk factors, plausibly pleaded an adverse employment action under either the materially adverse standard or the lowered standard articulated in *Muldrow*.

The analysis does not end there, however. While Imhof sufficiently alleges adverse employment actions arising from his transfer to project manager in February 2022 and the subsequent denials of his requests to work from home more than two days a week, his associational disability discrimination claim falls on the fourth element for both adverse actions. As noted, this element requires "that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." *Kelleher*, 939 F.3d at 468. Starting with Imhof's February 2022

20

reassignment to project manager, Imhof does not plead facts establishing that the reassignment was motivated by his NYCHA supervisors' intent to discriminate against him based on his wife's and son's health conditions. Imhof in fact explicitly alleges otherwise. He alleges that he "was *only* demoted and *only* had his title changed and salary cut because *he had a disability* that required he work from home," Am. Compl. ¶ 56 (emphases added), not because of his wife's or son's disability. Nor does Imhof allege that his wife's or son's health conditions were mentioned during his conversations with NYCHA's Human Resources and Sherrod following his reassignment to project manager. *See id.* ¶¶ 51-55. If anything, the allegations support the inference that Imhof was transferred "based on operational needs." *See id.* ¶¶ 53, 55. As to the denial of Imhof's post-transfer requests to work from home for more than two days a week, Imhof alleges only that "Defendants did not want Plaintiff to work from home because Defendants perceived that Plaintiff had disabled family members at home. But-for Defendants knowing of Plaintiff's family members' disabilities, he would have been able to exercise more work from home time." Am. Compl. ¶¶ 200-201. This conclusory assertion lacks any alleged facts supporting an inference of discrimination. He offers no allegations that explain, for instance, why the fact that Imhof had disabled family members at home meant that the NYCHA Defendants did not want him to work from home, let alone that their medical conditions factored into the NYCHA Defendants' decision making as to his remote work request.[11]

---

[11] While Imhof seems to argue a distraction theory in opposing dismissal, a plaintiff cannot amend his pleading through briefing. *See, e.g.*, *A Star Grp., Inc. v. Manitoba Hydro*, 621 F. App'x 681, 683 (2d Cir. 2015) ("[A] party may not amend its pleadings through statements in its briefs." (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)); *cf. In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 562 (S.D.N.Y. 2011) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." (internal quotation marks omitted) (alteration in original)). In any event, Imhof also has not pleaded facts allowing the reasonable inference that the NYCHA Defendants denied his remote work requests because they feared he

Imhof thus fails to allege facts falling into any of the three typical categories of associational disability discrimination—expense, disability by association, or distraction—or otherwise allege circumstances allowing for the reasonable inference that he suffered an adverse employment action on account of a relative's or associate's disability.   Thus, the NYCHA Defendants' motion is granted as to Imhof's ADA associational disability discrimination claim asserted against NYCHA in the fifth cause of action.

### ii.        NYCHRL

The NYCHRL dictates that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of the actual or perceived . . . disability . . . of any person, to refuse to hire or employ or to bar or to discharge from employment such person."   N.Y.C. Admin. Code § 8-107(1)(a).  In addition, "[t]he provisions of [Section 107] set forth as unlawful discriminatory practices shall be construed to prohibit such discrimination against a person because of the actual or perceived . . . disability . . . of a person with whom such person has a known relationship or association."   *Id.* § 8-107(20).   "The NYCHRL thus provides a cause of action for disability association discrimination."   *Ladepo v. United Cerebral Palsy of New York City, Inc.*, No. 15 Civ. 7026 (VSB), 2018 WL 4356726, at *11 (S.D.N.Y. Sept. 12, 2018).   "Courts must analyze NYCHRL claims separately from any federal law claims and should construe the NYCHRL 'liberally for the accomplishment of the uniquely broad and remedial purposes thereof.'"   *Bueno v. Eurostars Hotel Co., S.L.*, No. 21 Civ. 535 (JGK), 2022 WL 95026, at *8 (S.D.N.Y. Jan. 10, 2022) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir.

---

would not perform his job adequately because he needed to care for his family members.  *See Graziadio*, 817 F.3d at 433 ("[The plaintiff] has not argued that she was terminated because her employer feared she would not be at work at all in the future in order to take care of her disabled son.").

2013)).  The standard for a plaintiff to establish a discriminatory act under the NYCHRL is more lenient than under federal law: a plaintiff need only show that he was "treated . . . less well, at least in part for a discriminatory reason."  *Khwaja v. Jobs to Move Am.*, No. 19 Civ. 7070 (JPC), 2021 WL 3911290, at *3 (S.D.N.Y. Sept. 1, 2021) (quoting *Mihalik*, 715 F.3d at 110 n.8).  It is sufficient to show "differential treatment of any degree based on a discriminatory motive."  *Gorokhovsky v. New York City Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014).

Imhof also has failed to state an associational disability discrimination claim under the NYCHRL, even considering that statute's more lenient standard.  Imhof has not pleaded that he was treated less well, even in part, due to discrimination because of his wife's or son's health condition, for the reasons discussed at *supra* III.B.1.i.  He has not alleged any facts indicating that Sherrod's decision to reassign him was in any way based on his family's health conditions, but instead alleges that NYCHA's Human Resources told him that he was being reassigned based on operational needs.  Am. Compl. ¶¶ 53, 55.  In fact, as noted above, he alleges that the *only* reason he was demoted was his own disability.  *Id.* ¶ 56.  Likewise, he has not alleged that anyone at NYCHA denied his requests to work from home—whether pre- or post-reassignment to project manager—due in any part to his wife or son's medical conditions.  His only allegation in this regard is the conclusory statement, quoted above, that Defendants did not want him to work from home because they perceived he had disabled family members at home.  That allegation, standing alone, fails to explain why the NYCHA Defendants' perception that Imhof had disabled family members at home would have motivated them to deny his requests for remote work or otherwise that the NYCHA Defendants arrived at those decisions for reasons based on his family members' disabilities.  Thus, Imhof's NYCHRL associational disability discrimination claim against NYCHA and Morrison in the fifth cause of action is dismissed.  *See Mihalik*, 715 F.3d at 113

("[T]he NYCHRL is not a general civility code, and a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives." (citations omitted)).

### 2. Seventh Cause of Action: Preliminary Injunction

In his seventh cause of action, titled "Preliminary Injunction to grant Plaintiff an accommodation," Imhof "seeks equitable relief in the form of having his accommodation approved." Am. Compl. ¶ 217. "[A] preliminary injunction is an extraordinary remedy never awarded as of right." *Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (internal quotation marks omitted). "A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). The parties appear to dispute whether the Court should review Imhof's request for a preliminary injunction under the prohibitory injunction standard—described immediately above—or under the "heightened legal standard" for mandatory injunctions, which requires a "showing [of] a clear or substantial likelihood of success on the merits." *Id.* (internal quotation marks omitted). *See* NYCHA Motion at 14-15; Imhof NYCHA Opp. at 12. "Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it." *N. Am. Soccer League*, 883 F.3d at 36. The same heightened standard also applies "where the injunction being sought will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *Yang v. Kosinski*, 960 F.3d 119, 127-28 (2d Cir. 2020) (internal quotation marks omitted).

It is not necessary to resolve whether the heightened standard for mandatory injunctions applies because the seventh cause of action is moot. The only injunctive relief sought is "in the

form of having [Imhof's] accommodation approved," Am. Compl. ¶ 217, yet Imhof alleges that the latest accommodation request he submitted was approved, *id.* ¶¶ 121-122, 126 (alleging that it "was over fifty . . . days before Imhof *received* his accommodation extension," which was requested on May 15, 2023).   Indeed, Imhof concedes that he has received the requested accommodation in his briefing, stating that he "has been working from home for over a year" and maintaining (for purposes of the appropriate preliminary injunction standard) "that *is* the status quo."  Imhof NYCHA Opp. at 12.  And later he writes that his accommodation was "eventually approved on July 17, 2023."   *Id.* at 16.   Most tellingly, Imhof acknowledges that "[t]he accommodation request that gave rise to [the preliminary injunction cause of action], the request made on May 15, 2023, is technically moot as Defendants point out."  *Id.* at 12 n.8.

This concession notwithstanding, Imhof insists that his request for injunctive relief is somehow not moot because he "is asking to enjoin Defendants from frequently harassing him with the accommodation process."  Imhof NYCHA Opp. at 12; *see also id.* at 15 ("The issue is not that Plaintiff may or may not grant a request; the issue is that Defendant has used, and will continue to use, Plaintiff's accommodation approval system to harass him.").   This argument fails out of the gate because Imhof has not sought an injunction ordering Defendants to approve his accommodation requests in a timelier manner.   Rather, as explicitly pleaded in the Amended Complaint, Imhof seeks "a court order granting him his reasonable accommodation to work from home despite Defendants' failure to engage in the cooperative dialogue around his accommodation." Am. Compl. ¶ 228; *accord id.* ¶ 217 ("Plaintiff seeks equitable relief in the form of having his accommodation approved.").   And, of course, "[i]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."  *In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d at 562.

Imhof also speculates that his accommodation requests will not be approved in a timely fashion in the future. Imhof NYCHA Opp. at 15 ("By delaying any response to Plaintiff's request for approval, Defendants can exacerbate and attack Plaintiff's disabilities."). But Imhof has not offered any compelling basis to conclude that Defendants are likely to act in the manner he fears. In fact, he notes in his brief that Defendants extended his most recent accommodation cycle to six months. *Id.* at 15 n.10. "In other words, there is no basis to conclude that [Imhof] remains under a constant threat" that he will suffer retaliatory delays in the responses to his accommodation requests moving forward, and he therefore cannot avoid the mootness of his request based on his speculation about the timing of future responses. *Abadi v. City of New York*, No. 22-1560, 2023 WL 3295949, at *1 (2d Cir. May 8, 2023) (summary order) (cleaned up), *cert. denied*, 144 S. Ct. 260 (2023); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("The speculative nature of [the plaintiff's] claim of future injury requires a finding that [the irreparable injury] prerequisite of equitable relief has not been fulfilled."). Imhof's seventh cause of action therefore is dismissed as moot.

### 3. Defendant Lupin

Imhof asserts NYCHRL claims against Lupin in the first four causes of action, which are for disability discrimination, retaliation, failure to engage in cooperative dialogue, and hostile work environment, respectively. Am. Compl. ¶¶ 143, 161, 163-174, 185.[12] The NYCHA Defendants

---

[12] The NYCHA Defendants argue that no ADA claims can lie against Lupin because that statute does not permit individual liability. NYCHA Motion at 19-20. As Imhof observes in his Opposition, *see* Imhof NYCHA Opp. at 18, however, the Amended Complaint does not allege violations of the ADA by Lupin, *see* Am. Compl. ¶¶ 143, 161, 163-174, 185. Imhof and the NYCHA Defendants appear to assume that Imhof asserts claims against Lupin under the NYSHRL, *see* NYCHA Motion at 20-21; NYCHA Opp. at 18, but the Amended Complaint does not plead claims against Lupin under the NYSHRL either, *see* Am. Compl. ¶¶ 143, 161, 163-174, 185.

appear to argue that all these claims should be dismissed because Lupin was not actually involved in any discriminatory conduct. *See* NYCHA Motion at 19-21.[13]  They do not, however, assert that Imhof fails to plead the substantive elements of any of these four claims.

As the New York Court of Appeals has explained, "for purposes of the NYCHRL, employees 'may incur liability only for their own discriminatory conduct, for aiding and abetting such conduct by others, or for retaliation against protected conduct.'" *Charles v. City of New York*, No. 21 Civ. 5567 (JPC), 2023 WL 2752123, at *7 (S.D.N.Y. Mar. 31, 2023) (quoting *Doe v. Bloomberg, L.P.*, 167 N.E.3d 454, 459 (N.Y. 2021)).  "To state a claim for aiding and abetting unlawful discrimination or retaliation, a plaintiff must plead that the defendant actually participated in the unlawful conduct of the principal actor." *Nezaj v. PS450 Bar & Rest.*, No. 22 Civ. 8494 (PAE), 2024 WL 815996, at *9 (S.D.N.Y. Feb. 27, 2024).

Assessing this aspect of the NYCHA Defendants' motion is complicated by Imhof's somewhat jumbled pleadings in the Amended Complaint.  Imhof alleges that on May 15, 2023, he applied for a reasonable accommodation, that he did not receive a response on that application until July 18, 2023, and that "Defendant NYCHA and Defendant Lupin" were "obligated to respond to Imhof's request within 30 days."  Am. Compl. ¶¶ 121-123.  He also alleges that "Lupin is involved with and directs Defendant NYCHA to provide accommodations for Imhof," *id.* ¶ 113, and that this delay occurred because Lupin "directed Defendant NYCHA not to give Imhof his reasonable accommodation in a timely manner to harass and retaliate against him," *id.* ¶ 124.  Imhof also then alleges, "[i]n the alternative, Defendants, including Defendant Lupin, failed to diligently engage in any cooperative dialogue with Imhof about his accommodation."  *Id.* ¶ 125.

---

[13]  The NYCHA Defendants only generally argue that Imhof fails to allege Lupin's involvement and do not present any analyses specific to the various theories of discrimination alleged in these four causes of action.

He then pleads that because it was "over fifty . . . days before Imhof received his accommodation extension[,] . . . Defendant Lupin is an aider and abettor in the discrimination and is complacent[14] [sic] with it." *Id.* ¶¶ 126-127.  Finally, as is customary but rather unhelpful in this case, for each cause of action Imhof realleges and incorporates all of the allegations that precede the causes of action portion of the Amended Complaint.  Am. Compl. ¶¶ 128, 145, 163, 175.  From these scattershot pleadings, it is difficult to tell whether Imhof is alleging direct liability or aider and abettor liability as to Lupin.

Ultimately, however, the NYCHA Defendants' argument here fails.  Their argument boils down to the following sentence in their moving brief: "[Imhof's] allegations, that Lupin directed that NYCHA delay its responses to Plaintiff's requests to harass and retaliate against him are conclusory, and speculative, premised only 'upon information and belief' conjecture, and need not be accepted as true." NYCHA Motion at 21.  But, of course, the Court does have to accept Imhof's well-pleaded allegations as true at this stage.  *Iqbal*, 556 U.S. at 679.  To be sure, the allegations of Lupin's involvement are far from extensive.  *See* Am. Compl.  ¶¶ 111, 113, 116, 124, 125, 127. They are not, however, so barren as to be purely conclusory.  The allegations of Lupin's involvement are based on Lupin notifying Imhof "that he would be receiving a reasonable accommodation," *id.* ¶ 111, and that all subsequent approvals have been the same as the initial approval sent by Lupin, "indicating that [Lupin] remains involved in the accommodation approval or denial process," *id.* ¶ 116.  Though just barely, these allegations sufficiently show Lupin's actual

---

[14] Presumably this is a typographical error, and Imhof meant to plead that Lupin was *complicit* in the alleged discrimination.

participation in the allegedly unlawful conduct.[15]  The NYCHA Defendants' motion is therefore denied with respect to the claims asserted against Lupin.

## IV.  Leave to Amend

Lastly, the Court considers whether to grant Imhof leave to amend for a second time.  As previously discussed, on July 31, 2023, the Court granted Imhof leave to file the Amended Complaint.  Dkt. 41.  Imhof has not requested leave to file an additional amended complaint. Accordingly, the Court declines to *sua sponte* grant leave to amend.  *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 126 (2d Cir. 2013) ("While leave to amend under the Federal Rules of Civil Procedure is freely granted, no court can be said to have erred in failing to grant a request that was not made." (internal quotation marks omitted)).

## V.  Conclusion

For the foregoing reasons, the Court denies Sherrod's motion to dismiss without prejudice and he may file a motion for summary judgment upon completion of limited discovery on the sole question of whether Sherrod was a federal employee at the relevant time.  The Court grants in part and denies in part the motion of the NYCHA Defendants.  The fifth cause of action is dismissed with prejudice as against NYCHA and Morrison, and the seventh cause of action is dismissed without prejudice as moot.  The NYCHA Defendants' motion for oral argument, Dkt. 74, is denied as moot.

---

[15] The NYCHA Defendants also suggest that Lupin should be dismissed under the witness-advocate rule.  *See* NYCHA Motion at 21-22.  Even putting aside the fact that Lupin has not appeared as counsel in this action, the witness-advocate rule would not be a basis for dismissing otherwise viable claims against a defendant.

The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 61, 66, and 74.[16]

SO ORDERED.

Dated: July 11, 2024
New York, New York

_____
JOHN P. CRONAN
United States District Judge

---

[16] The last section of Imhof's opposition brief is titled "Sanctionable Conduct" and criticizes the NYCHA Defendants' motion for partial dismissal as being "riddled with inaccuracies, false statements, and improper legal citations," and "rely[ing] almost exclusively on summary judgment standards and dispute [sic] facts." Imhof NYCHA Opp. at 21. As this Opinion and Order should make clear, the Court disagrees and certainly sees no basis to impose sanctions on the NYCHA Defendants.