UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                               :

JOHN IMHOF,                               :
                                               :

                          Plaintiff,          :
                                                 :

                      -v-                    :          23 Civ. 1880 (JPC) (JW)
                                                 :

NEW YORK CITY HOUSING AUTHORITY *et al.*,  :        <u>OPINION AND ORDER</u>
                                                 :

                      Defendants.      :
                                                 :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

        Through this civil action, John Imhof, an employee of the New York City Housing

Authority ("NYCHA"), asserts claims for disability discrimination against NYCHA and three

individuals associated with the agency. One of those individuals, Daniel Sherrod, contends that

he is a federal employee, not a regular NYCHA employee like Imhof, and that his federal

employment status entitles him to summary judgment on Imhof's city-law claims for two reasons.

First, Sherrod argues that because the Rehabilitation Act provides the exclusive remedy for

disability discrimination claims in federal employment, the statute preempts Imhof's city-law

causes of action against him. And second, Sherrod asserts that those city-law claims are subject

to the Westfall Act, requiring substitution of the United States under the Federal Tort Claims Act

("FTCA") and the dismissal of Imhof's claims for failure to exhaust administrative remedies.

        For the following reasons, the Court disagrees as to both grounds. While the Rehabilitation

Act provides the exclusive remedy for claims of disability discrimination by *federal* employees,

nothing in the statute or precedential caselaw suggests that Congress intended to eliminate

alternative remedies available to non-federal employees, like Imhof, who are not covered by the

Rehabilitation Act at all and bring claims against a federal employee in that person's individual capacity. And although the Westfall Act broadly immunizes federal employees against damages suits based on tortious acts or omissions committed within the scope of their employment, Sherrod does not identify a persuasive basis for the Court to disregard the Second Circuit's statement that the Act does not apply to statutory discrimination claims under New York City's human rights law. The Court therefore denies Sherrod's motion for summary judgment.

## I. Background

### A.    Relevant Factual Background[1]

The Intergovernmental Personnel Act ("IPA") "allows for the temporary assignment of employees between the Federal Government and State, local and Indian tribal governments, institutions of higher education and other eligible organizations." Sherrod 56.1 Stmt. ¶ 1 (internal quotation marks omitted); *see* 5 U.S.C. § 3372. The purpose of assigning federal employees under the IPA is to "facilitate cooperation between the Federal Government and the non-Federal entity through the temporary assignment of skilled personnel." Sherrod 56.1 Stmt. ¶ 2 (internal quotation marks omitted). The IPA, however, provides that a federal employee assigned to a state or local government "remains an employee of his [federal] agency" and that "[t]he [FTCA] and any other Federal tort liability statute apply to an employee so assigned." 5 U.S.C. § 3373(a).

---

[1] The following facts are considered in the light most favorable to Imhof, and are taken from the parties' statements of undisputed material facts submitted pursuant to Local Civil Rule 56.1(a), Dkts. 107 ("Sherrod 56.1 Stmt."), 114 ("Imhof 56.1 Stmt."), as well as the declarations filed in support of and in opposition to Sherrod's motion for summary judgment and the exhibits attached to those declarations, Dkt. 109 (declaration of Alyssa B. O'Gallagher); Dkt. 112 (declaration of Walker G. Harman); Dkt. 112-1 ("Imhof Decl."). Unless otherwise noted, the Court cites only to a party's Rule 56.1 Statement where the adverse party does not dispute the fact, has offered no admissible evidence to refute that fact, simply seeks to add its own "spin" on the fact, or otherwise disputes only the inferences that can be drawn from the stated fact.

In August 2014, Sherrod joined the U.S. Department of Housing and Urban Development ("HUD") as its Director of the Office of Public Housing.  Sherrod 56.1 Stmt. ¶ 6.  Sherrod was later "detailed from HUD to NYCHA pursuant to assignment agreements under the IPA from January 24, 2022, through July 22, 2022, and from July 29, 2022, through November 30, 2022." *Id.* ¶ 9.  Imhof alleges that on January 24, 2022, Sherrod assumed the role of NYCHA's Chief Operating Officer ("COO").  Dkt. 42 ("Am. Compl.") ¶ 37.[2]

At all relevant times, Imhof was not a federal employee.  *See* Imhof Decl. ¶¶ 7-10; Imhof 56.1 Stmt. ¶¶ 11-14.  As he alleges in his Amended Complaint, Imhof began working for NYCHA on October 4, 2021, as "Vice President of Support Services and as a permanent employee of the City of New York in the civil service title of Administrative Architect."  Am. Compl. ¶ 19.  Imhof alleges that he suffered various forms of disability discrimination, including disparate treatment, retaliation, a hostile work environment, and the failure to receive accommodations for his alleged disability.  *See, e.g.*, *id.* ¶¶ 1-8.  Imhof contends that, after Sherrod began serving as NYCHA's COO, Sherrod was involved in NYCHA's alleged acts of discrimination, including the denial of Imhof's accommodation requests.  *See, e.g.*, *id.* ¶¶ 42, 44, 47.

## B.    Procedural History

Imhof commenced this action on March 3, 2023.  Dkt. 1.  Through a First Amended Complaint filed on August 11, 2023, Imhof asserts causes of action against NYCHA, Sherrod, and two NYCHA employees for disability discrimination.  Am. Compl. ¶¶ 128-228.  As against Sherrod individually, Imhof alleges claims under the New York City Human Rights Law ("NYCHRL") for disparate treatment, retaliation, a hostile work environment, and a failure to

---

[2] The Court refers to allegations in Imhof's First Amended Complaint for purposes of providing context regarding the basic nature of his claims.

provide accommodations.  *Id.* ¶¶ 128-162, 177-203.  Imhof "seeks back pay, front pay, damages for loss of opportunity, damages related to loss of pension payments due to [a] demotion, emotional distress damages, loss of annual leave, commuting costs, legal fees and any other relief the Court deems appropriate."  *E.g.*, *id.* ¶ 144.

On October 16, 2023, Sherrod moved to dismiss the NYCHRL claims against him under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkts. 66, 67 ("Sherrod MTD"), 68, 70. Sherrod argued that "federal employment discrimination remedies" preempt Imhof's NYCHRL claims as against him and that, in any event, the Westfall Act makes the United States the sole proper defendant to those claims, requiring substitution and dismissal for failure to exhaust administrative remedies under the FTCA.  Sherrod MTD at 3-9.  The United States simultaneously filed a certification signed by the United States Attorney for the Southern District of New York pursuant to 28 U.S.C. § 2679(d)(1), certifying that Sherrod was a HUD employee during all relevant times and was acting within the scope of his federal employment for purposes of Imhof's NYCHRL claims against him.  Dkt. 68.

The Court issued an Opinion and Order on July 11, 2024, denying Sherrod's motion to dismiss without prejudice.  *See Imhof v. N.Y.C. Hous. Auth.*, No. 23 Civ. 1880 (JPC), 2024 WL 3376084, at *6 (S.D.N.Y. July 11, 2024).  The Court did so on the ground that Sherrod's purported status as a federal employee—a fact on which both of his asserted grounds for dismissal relied— does not appear on the face of Imhof's First Amended Complaint.  *See id.*  The Court, however, ordered the parties to engage in limited discovery concerning Sherrod's federal employment status and granted Sherrod leave to reraise his arguments for dismissal though a motion for summary judgment following the completion of that discovery.  *See id.* at *6-7.

On November 27, 2024, Sherrod moved for summary judgment on Imhof's NYCHRL claims against him, relying on the same grounds raised in his earlier motion to dismiss. Dkts. 105, 106 ("Motion"), 107-09. Imhof opposed Sherrod's motion on December 11, 2024. Dkts. 112, 113 (Imhof's opposition brief), 114. Sherrod filed a reply one week later. Dkt. 116 ("Reply"). In response to an Order by the Court, the parties then submitted simultaneous supplemental briefs addressing questions regarding Sherrod's arguments under the Rehabilitation Act and Westfall Act. Dkts. 126 ("Imhof Supp. Br."), 127 ("Sherrod Supp. Br.").

The Court held oral argument on Sherrod's motion on June 9, 2025. *See* Dkt. 129 ("Tr.").

## II.  Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court must "resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant "to present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). The non-movant "may not rely on conclusory allegations or unsubstantiated speculation," and "must offer some hard evidence showing that its version of the events is not wholly fanciful." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)

(internal quotation marks omitted).  The non-movant must present more than a mere "scintilla of evidence."  *Anderson*, 477 U.S. at 252.

### III.  Discussion

Sherrod contends that his status as a federal employee entitles him to summary judgment on Imhof's NYCHRL claims for two independent reasons.  First, Sherrod argues that "federal employment discrimination remedies"—by which he means the Rehabilitation Act's provisions pertaining to federal employment—"preempt the NYCHRL claims asserted against him."  Motion at 5-7 & n.2; Reply at 3-6 & nn.3-4; Sherrod Supp. Br. at 1-2.  Second, Sherrod contends that dismissal is necessary because Imhof's NYCHRL claims against him are subject to the Westfall Act, meaning that the United States is the sole proper defendant to those claims, and because Imhof failed to exhaust his administrative remedies under the FTCA.  Motion at 1 n.1; Sherrod MTD at 5-9; Sherrod Supp. Br. at 2-3.

For the following reasons, the Court disagrees that the Rehabilitation Act preempts Imhof's NYCHRL claims against Sherrod in his individual capacity and declines to depart from the Second Circuit's view that such claims are not subject to the Westfall Act.  The Court therefore denies Sherrod's motion for summary judgment.

### A.    The Rehabilitation Act

Sherrod's preemption argument hinges on the effect of the Rehabilitation Act on the availability of alternative remedies for disability discrimination against federal-employee defendants.  Sections 501 and 505 of that statute, 29 U.S.C. §§ 791, 794a, collectively provide a cause of action for disability discrimination in federal employment that incorporates the remedies and procedural restrictions of Section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16.

Because the relevant provisions of the Rehabilitation Act rely on Section 717, Sherrod's preemption argument hinges in large part on the Supreme Court's decision in *Brown v. General*

*Services Administration*, 425 U.S. 820 (1976). *See* Motion at 5-6. In *Brown*, the Supreme Court held that Section 717 "provides the exclusive judicial remedy for claims of discrimination in federal employment" on the basis of characteristics protected by Title VII—*i.e.*, race, color, religion, sex, and national origin. *Brown*, 425 U.S. at 835; *see* 42 U.S.C. § 2000e-16(a). The Supreme Court principally inferred a broad preemptive effect from Section 717's structure, which "provides for a careful blend of administrative and judicial enforcement powers" while imposing "rigorous administrative exhaustion requirements and time limitations." *Brown*, 425 U.S. at 833. As the Supreme Court explained, "[t]he balance, completeness, and structural integrity of § 717 . . . would be driven out of currency were immediate access to the courts under other, less demanding statutes permissible." *Id.* at 832-33. Thus, "[i]t would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading." *Id.* at 833. Relatedly, the *Brown* Court observed that Section 717's legislative history demonstrated Congress's intent to "create an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Id.* at 829. Finally, the Supreme Court appeared to reason that the "pre-emption of all other statutory remedies for employment discrimination is mandated by the policies of sovereign immunity, which require a waiver of that immunity to be read as narrowly as possible." *DiPompo v. W. Point Mil. Acad.*, 708 F. Supp. 540, 544 (S.D.N.Y. 1989) (citing *Brown*, 425 U.S. at 833).

Courts in this Circuit have extended *Brown*'s reasoning to hold that "Section 501 of the Rehabilitation Act provides the exclusive route by which federal employees may raise claims of employment discrimination on the basis of disability." *Hodges v. Att'y Gen. of U.S.*, 976 F. Supp. 2d 480, 490 (S.D.N.Y. 2013) (internal quotation marks omitted). Courts have done so because, as noted, Section 505 of the Rehabilitation Act makes "[t]he remedies, procedures, and rights set

forth in section 717" available to federal employees alleging violations of Section 501.  29 U.S.C. § 794a(a)(1).  So given that the remedies and procedures "for a violation of section 501 are precisely those provided by section 717," courts have "reasoned that the holding of *Brown* also applie[s] to disability discrimination in violation of section 501."  *Rivera v. Heyman*, 157 F.3d 101, 105 (2d Cir. 1998); *see DiPompo*, 708 F. Supp. at 544 (holding that a federal worker's "claim of employment discrimination based on handicap arises only under § 501 of the Rehabilitation Act, a provision that effectively has been incorporated into Title VII by § 505 of the Rehabilitation Act").  Taking that reasoning a step further, the Second Circuit has also held that because the Rehabilitation Act provides the exclusive remedy for disability discrimination in federal employment, a federal employee covered by the Act cannot circumvent Section 501 by seeking relief under state and city human rights laws against those responsible for the discrimination in their individual capacities.  *Rivera*, 157 F.3d at 105.

Under *Brown* and its progeny, Sherrod's preemption argument thus proceeds as follows.  Because *Brown* makes Section 717 the exclusive remedy for discrimination in federal employment based on characteristics protected under Title VII, the Rehabilitation Act's incorporation of Section 717's remedies and procedures makes Section 501 the exclusive remedy for disability discrimination claims against federal employers.  And under *Rivera*, a federal employee cannot escape the Rehabilitation Act's preemptive effect by bringing individual-capacity claims against those responsible for the challenged discrimination under state and city human rights laws.  So by suing Sherrod in his individual capacity under the NYCHRL for disability discrimination, the argument goes, Imhof runs into a preemption bar under *Brown* and *Rivera*.

The problem with Sherrod's argument is that while Section 717's structure and history establish it as the exclusive remedy for *federal* employees protected from discrimination under the

statute, "[t]here is no evidence . . . that Congress meant § 717 to foreclose alternative remedies available to those *not* covered by the statute." *Davis v. Passman*, 442 U.S. 228, 247 (1979) (emphasis added). Thus, the Supreme Court held in *Davis* that Section 717 "leaves undisturbed whatever remedies [a plaintiff not covered by the statute] might otherwise possess." *Id.* And without the foundational premise that Section 717 preempts remedies otherwise available to plaintiffs who are not covered by the statute, Sherrod's inference that the Rehabilitation Act, by virtue of its incorporation of Section 717, preempts Imhof's NYCHRL claims against him is without support in *Brown* and *Rivera*. In other words, just as *Davis* makes clear that there is no basis to infer that Congress intended Section 717 to preclude alternative remedies enjoyed by those not covered by Section 717, there is no basis to infer that Section 501 of the Rehabilitation Act, in incorporating Section 717, displaces remedies enjoyed by non-federal employees, like Imhof, who are not covered by Section 501.

In arguing that *Brown*'s logic nevertheless extends to city-law human rights claims brought by a city employee against an individual federal-employee supervisor, Sherrod relies heavily on the district court's decision in *Xu v. City of New York*, No. 08 Civ. 11339 (DLC), 2010 WL 3060815 (S.D.N.Y. Aug. 3, 2010). In *Xu*, a *pro se* city employee brought employment discrimination claims against her two federal-employee supervisors alleging, among other things, violations of the New York State and New York City human rights laws. *Id.* at *1-2. The district court granted judgment on the pleadings in favor of the two federal supervisors, holding that "[w]hile *Brown* and its progeny do not address the precise situation . . . where a local government employee is suing a supervisor who is a federal employee, the rationale underlying *Brown* applies with equal force" in that context. *Id.* at *2. And applying the Second Circuit's circumvention rationale in *Rivera*, the court held that *Brown*'s "exclusivity bar" applied to the plaintiff's state-law

and city-law claims against her federal supervisors "because otherwise the plaintiff would be able 'to evade the holding of *Brown* that Title VII provides the sole remedy for federal employees alleging employment discrimination.'" *Id.* (quoting *Rivera*, 157 F.3d at 105).

The Supreme Court's analysis in *Davis*, however, undercuts *Xu*'s rationale that *Brown*'s logic applies with equal force to claims asserted by a city employee against a federal-employee supervisor. Specifically, the Supreme Court explained that *Brown* merely "held that the remedies provided by § 717 are exclusive *when those federal employees covered by the statute* seek to redress the violation of rights guaranteed by the statute." *Davis*, 442 U.S. at 247 n.26 (emphasis added); *see also Annis v. County of Westchester*, 36 F.3d 251, 255 n.4 (2d Cir. 1994) (observing that it is "clear that *federal* employees are restricted to Title VII when complaining of employment discrimination"). And contrary to *Xu*'s view that "*Brown* applies with equal force" to non-federal employees, 2010 WL 3060815, at *2, the Supreme Court in *Davis* stressed that Section 717 cannot be interpreted "to foreclose the judicial remedies of those expressly unprotected by the statute," 442 U.S. at 247. Thus, the Supreme Court made clear that Section 717 "leaves undisturbed whatever remedies [a plaintiff] might otherwise possess." *Id.* Consistent with the Supreme Court's view, the Second Circuit declined to adopt the *Xu* court's preemption rationale on appeal, and appears to have affirmed the dismissal of the plaintiff's state-law and city-law causes of action on the alternative ground that the plaintiff insufficiently alleged discriminatory intent. *See Xu v. City of New York*, 612 F. App'x 22, 25 (2d Cir. 2015) (summary order) (concluding that while "suit against the Federal Defendants in their individual capacities would be a potential avenue for relief," the plaintiff did not provide "factual allegations 'sufficient to plausibly suggest' the Federal Defendants acted with a 'discriminatory state of mind'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009))).

Here, it is undisputed that as a non-federal employee, Imhof is not protected by Section 501 of the Rehabilitation Act.  So because there is "no evidence . . . that Congress meant § 717 to foreclose alternative remedies available to those not covered by the statute," *Davis*, 442 U.S. at 247, *Brown* offers no basis to conclude that Imhof's NYCHRL claims are preempted by Section 501 of the Rehabilitation Act, a provision that likewise affords him no protection.

The Court recognizes that this result departs from *Xu*.  But in the end, the Court finds no basis to infer from Section 501's status as the exclusive judicial remedy for disability discrimination claims by federal employees that Congress intended thereby to eliminate alternative discrimination remedies possessed by those, like Imhof, who are not covered by that provision.  That result cannot fairly be characterized as necessary to prevent Section 501's "careful and thorough remedial scheme" from being "circumvented by artful pleading," *Brown*, 425 U.S. at 833, since non-federal employees like Imhof have no ability to sue under Section 501 at all and therefore have nothing to circumvent.  Nor does *Brown*'s reliance on Section 717's legislative history—which indicated that Congress intended "to create an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination," *id.* at 828-29—in any way suggest that Congress intended alternative employment discrimination remedies possessed by *non-federal* employees like Imhof to be caught in the crossfire.  And neither are there significant concerns regarding sovereign immunity, *id.* at 833, where, as here, the plaintiff seeks to proceed against his federal-employee supervisor individually.  *See Tanvir v. Tanzin*, 894 F.3d 449, 459 (2d Cir. 2018) ("Sovereign immunity does not . . . shield federal officials sued in their individual capacities.").  The Court therefore disagrees that *Brown*'s logic applies with equal force when a non-federal employee, who undisputedly is not covered by Section 501 and

Section 717, seeks to avail himself of alternative remedies available under state law by suing those responsible for the alleged discrimination in their individual capacities.

For these reasons, the Court holds that Sherrod is not entitled to summary judgment on Imhof's NYCHRL claims by virtue of the Rehabilitation Act's preemptive effect.

**B.    The Westfall Act**

In the alternative, Sherrod argues that he is immune to Imhof's NYCHRL claims under the Westfall Act and that substitution of the United States under the FTCA and the dismissal of Imhof's claims for failure to exhaust administrative remedies are required.  Motion at 1 n.1; Sherrod MTD at 5-9.[3]

Congress enacted the Federal Employees Liability Reform and Tort Compensation Act— better known as the Westfall Act—to provide "federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007); *see* Pub. L. No. 100-694, § 2(b), 102 Stat. 4563, 4564 (1988) (stating that the purpose of the statute is to "protect Federal employees from personal liability for common law torts committed within the scope of their employment").  To that end, Section 5 of the statute provides that federal employees are personally immune from suits seeking damages "[(1)] for injury or loss of property, or personal injury or death [(2)] arising or resulting from the negligent or wrongful act or omission [(3)] of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1).  The only exceptions to that grant of immunity are for claims alleging either "a violation of the Constitution of the United

---

[3] In addressing the Westfall Act, both parties largely rest on the briefing submitted in connection with Sherrod's prior motion to dismiss, as well as their supplemental briefs.

States" or "a violation of a statute of the United States under which such action against an individual is otherwise authorized." *Id.* § 2679(b)(2).

When a cause of action against a federal employee falls within the scope of Section 5 of the Westfall Act, Section 6 of the statute allows the Attorney General[4] to certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." *Id.* § 2679(d)(1); *see United States v. Smith*, 499 U.S. 160, 166 (1991) ("[Section] 6 directs the Attorney General in appropriate tort cases to certify that a Government employee named as defendant was acting within the scope of his employment when he committed the alleged tort."). Unless successfully challenged, the Attorney General's certification requires that "any civil action or proceeding commenced upon [a claim within the scope of Section 2679(b)(1)] in a United States district court shall be deemed an action against the United States" pursuant to the FTCA. 28 U.S.C. § 2679(b)(1). Thus, the Westfall Act "provides government employees with immunity against claims of common-law tort," requiring such claims to be asserted against the United States in accordance with the FTCA's procedural requirements. *Rivera v. United States*, 928 F.2d 592, 608 (2d Cir. 1991); *see Carelock v. United States*, No. 14 Civ. 3594 (RA), 2015 WL 5000816, at *4 (S.D.N.Y. Aug. 20, 2015) ("Under the [Westfall Act], the exclusive remedy for personal injury arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is a lawsuit against the United States." (internal quotation marks omitted)).

---

[4] The Attorney General's certification authority under Section 2679(d)(1) has been delegated to the United States Attorney for this District. *See* 28 C.F.R. § 15.4(a) ("The United States Attorney for the district where the civil action or proceeding is brought . . . is authorized to make the statutory certification that the Federal employee was acting within the scope of his office or employment with the Federal Government at the time of the incident out of which the suit arose.").

Here, Sherrod argues that Imhof's employment discrimination claims under the NYCHRL fall within the scope of Section 5 of the Westfall Act, and that substitution of the United States is therefore required pursuant to the United States Attorney's scope-of-employment certification in this case.  Specifically, Sherrod contends that Imhof's claims (1) seek damages for "personal injury" (including emotional distress), (2) arise out of Sherrod's allegedly "wrongful" conduct in violating the NYCHRL's prohibitions on disability discrimination, and (3) are based on acts that Sherrod took "within the scope of his [federal] office or employment" as Imhof's supervisor. 28 U.S.C. § 2679(b)(1); *see* Sherrod Supp. Br. at 2-3; Sherrod MTD at 5-7.

In determining whether Imhof's claims for disability discrimination under the NYCHRL fall under the Westfall Act's exclusivity provision—and thus require substitution of the United States in light of the United States Attorney's certification in this case—the Court does not write on a blank slate.  In *Rivera v. Heyman*, the Second Circuit stated that the Westfall Act's substitution procedure "applies only to tort claims, not to discrimination claims under the [New York State and New York City] Human Rights Laws."  157 F.3d at 105.  Although *Rivera* did not anchor that statement in the text of the Westfall Act's operative provisions (such as in the meaning of "personal injury" or "negligent or wrongful act"), the Second Circuit appeared to draw a categorical distinction between traditional common law torts and claims asserted under New York State's and New York City's human rights laws, deeming the latter category beyond the scope of the Westfall Act.  *See id.* (emphasizing that the purpose of the Westfall Act was to "protect federal employees from personal liability for common law torts committed within the scope of employment").

In reaching that conclusion, the Second Circuit relied on the Westfall Act's preamble, which reflects the statute's focus on providing individual immunity for claims sounding in common law tort.  *See id.*  Among other things, the Westfall Act's preamble notes that the FTCA

makes the United States "responsible to injured persons for the *common law torts* of its employees

in the same manner in which the *common law* historically has recognized the responsibility of an

employer for torts committed by its employees within the scope of their employment."  102 Stat.

at 4563 (emphases added).  The preamble also emphasizes Congress's concern that the "erosion

of immunity of Federal employees from *common law tort* liability has created an immediate crisis"

necessitating legislative action.  *Id.* (emphasis added).  And, as the *Rivera* court noted, the

preamble explains that the "purpose" of the Westfall Act is to "protect Federal employees from

personal liability for *common law torts* . . . while providing persons injured by the *common law*

*torts* of Federal employees with an appropriate remedy against the United States."  *Id.* at 4564

(emphases added).[5]

Sherrod does not attempt to distinguish *Rivera* from this case, but instead contends that the

Court should disregard *Rivera*'s interpretation of the Westfall Act because the Second Circuit's

analysis of the statute was *dicta*.  Sherrod MTD at 6.  Labeling a pronouncement by a higher court

as *dicta*, however, is hardly a license to "cavalierly disregard it."  *United States v. Hampton*, 676 F.

Supp. 3d 283, 301 (S.D.N.Y. 2023) (internal quotation marks omitted).  To the contrary, "Second

---

[5] The Westfall Act's preamble's emphasis on common law torts echoes the statute's legislative history.  The House Report accompanying the statute explained that under Section 5 of the Act, "an action against the United States under the FTCA for the *common law torts* of its employees becomes an exclusive remedy."  H.R. Rep. No. 100-700, at 5-6 (1988) (emphasis added) ("The 'exclusive remedy' provision of section 5 is intended to substitute the United States as the solely permissible defendant in all common law tort actions against Federal employees who acted in the scope of employment.").  In other words, the House Report reflects an interpretation of the exclusivity provision as rendering "the availability of suit under the FTCA" preclusive of "any other civil action or proceeding of any kind from being brought against an individual Federal employee or his estate *if such action or proceeding would sound in common law tort*."  *Id.* at 5 (emphasis added).  And although the House Report observed that certain statutory causes of action would be subject to Section 5 as well, it characterized such covered claims as "traditional tort causes of action codified in state statutes," such as state wrongful-death statutes.  *Id.* at 6 ("It is well established that the FTCA applies to such codified torts.").

Circuit *dictum* warrants substantial deference from this Court," *Antônio Pereira Ass'n v. Lynch*, No. 23 Civ. 8160 (JPC), 2024 WL 4349056, at *6 n.5 (S.D.N.Y. Sept. 30, 2024), and must generally be afforded "great weight" in cases to which it directly applies. *Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194, 209 (E.D.N.Y. 2007). That is especially so here given that *Rivera*'s treatment of the Westfall Act cannot fairly be described as a mere "personal opinion of a judge on a collateral question uttered 'by the way,'" *Gen. Elec. Co. v. Hygrade Sylvania Corp.*, 61 F. Supp. 476, 525-26 (S.D.N.Y. 1944), but was instead a point made in direct response to an argument raised by the plaintiff and was calculated to refute the notion that the dismissal of the plaintiff's human rights claims would allow the federal defendants in that case to escape liability for discrimination committed outside the scope of their employment. *See Rivera*, 157 F.3d at 105 (explaining that because the Westfall Act does not apply to discrimination claims under the New York State and New York City human rights laws, "the deduction that Rivera draws from the fact that the United States did not substitute itself as a party . . . is illogical").[6] The Court therefore treats *Rivera*'s interpretation of the Westfall Act—if not as controlling—as at least a "considered pronouncement that should be abandoned only when faced with a compelling argument to the contrary." *In re Cavalry Const., Inc.*, 496 B.R. 106, 115 (S.D.N.Y. 2013).

---

[6] Specifically, the plaintiff in *Rivera* argued on appeal that the dismissal of his state and city human rights claims against the individual federal defendants "would essentially immunize individual defendants who happened to be federal employees from discriminatory acts against other employees even where the government chooses not to substitute itself as a defendant" under the Westfall Act. Appellant's Brief at 26-27 & n.9, *Rivera v. Heyman*, No. 97-9316 (2d Cir. 1997) (emphasis omitted). In response, the individual federal defendants argued that the Westfall Act's "certification procedure . . . is applicable to tort claims, not employment discrimination claims." Appellees' Brief at 33 n.*, *Rivera v. Heyman*, No. 97-9316 (2d Cir. 1997). The Second Circuit ultimately adopted the federal defendants' interpretation of the statute. *See Rivera*, 157 F.3d at 105.

To that end, Sherrod argues (with some force) that *Rivera*'s interpretation of the Westfall Act as categorically excluding claims under New York State's and New York City's human rights laws is inconsistent with the operative language of the statute.  Sherrod MTD at 7; Sherrod Supp. Br. at 2-3.  Whereas *Rivera* apparently relied on a categorical distinction between tort claims and discrimination claims under New York's human rights laws, the operative language of Section 2679 only provides three requirements for the statute to attach: (1) the claim must be for "injury or loss of property, or personal injury or death"; (2) the claim must arise or result from a "negligent or wrongful act or omission"; and (3) that act or omission must be by a federal employee "while acting within the scope of his office or employment."  28 U.S.C. § 2679(b)(1).  Although these requirements (in addition to the Westfall Act's preamble and legislative history) do indeed indicate that Congress sought to reach claims sounding in tort, the *Rivera* court did not specifically analyze the meaning of these operative requirements in determining that discrimination claims under New York State's and New York City's human rights laws fall outside the scope of the Westfall Act.

Here, the parties agree that if the text of the Westfall Act supports a categorical exclusion for discrimination claims under the NYCHRL, it must be because such claims are not claims for "personal injury."[7]  Sherrod Supp. Br. at 3; Imhof Supp. Br. at 3.  In other contexts, however, the

---

[7] Sherrod does not argue that Imhof's NYCHRL claims are for "injury or loss of property" or for "death."  28 U.S.C. § 2679(b)(1).  Imhof, for his part, does not dispute that employment discrimination in violation of the NYCHRL qualifies as a "negligent or wrongful act," *id.*, although that phrase, like the term "personal injury," may be understood as limiting the Westfall Act to conduct properly classified as tortious.  *See Devlin v. United States*, 352 F.3d 525, 533-34 (2d Cir. 2003); *cf. Shaw v. Long Island R.R. Co.*, No. 16 Civ. 6972 (BMC), 2017 WL 5634122, at *5 (E.D.N.Y. Nov. 22, 2017).  And as relevant to this case in particular, the IPA makes clear that federal workers detailed to state or local governments remain employees of their federal agency for purposes of the FTCA and other federal tort liability statutes.  5 U.S.C. § 3373(a).  Accordingly, the Court limits its analysis to the Westfall Act's "personal injury" prong.  28 U.S.C. § 2679(b)(1).

Sherrod also argues that because the Westfall Act contains express exceptions for claims arising under federal statutes or the Constitution, it would be improper to infer a third "exception"

Supreme Court has "made quite clear that discrimination is 'a fundamental injury to the individual rights of a person,' a quintessential personal injury." *Stafford v. George Washington Univ.*, 56 F.4th 50, 54 (D.C. Cir. 2022) (quoting *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661 (1987)); *accord Hickey v. Irving Indep. Sch. Dist.*, 976 F.2d 980, 983 (5th Cir. 1992) ("As the Supreme Court has recognized, claims for discrimination are essentially claims for personal injury."). Indeed, at the time Congress enacted both the Westfall Act and the FTCA, the widely accepted legal meaning of "personal injury," especially as used in statutes, included "any injury which is an invasion of personal rights." *Personal Injury*, Black's Law Dictionary (6th ed. 1990); *accord Personal Injury*, Ballentine's Law Dictionary (1930) (defining "personal injury" as a "personal wrong" or as an "invasion of a personal right").[8] At common law, a personal injury was

---

[8] for Imhof's NYCHRL claims. Sherrod MTD at 7 (citing *Smith*, 499 U.S. at 167 (holding that the statute's "express creation of these two exceptions" indicated that Congress did not intend "a third exception that would preserve tort liability for Government employees when a suit is barred under the FTCA")). Yet improperly inferring a third exception to the Westfall Act's exclusivity provision would not be necessary to preserve Imhof's NYCHRL claims unless, contrary to *Rivera*, those claims fall within the general scope of the Act to begin with.

[8] Various authorities have also recognized a narrower definition of "personal injury," one limited to physical bodily injuries and, perhaps, psychiatric impairment beyond emotional distress alone. *See, e.g.*, *Personal Injury*, Black's Law Dictionary (6th ed. 1990) (defining "personal injury" in "a narrow sense" as "hurt or damage done to a man's *person*, such as a cut or bruise, a broken limb, or the like"); *In re Cohen*, 107 B.R. 453, 455 (S.D.N.Y. 1989) (suggesting that the narrow definition of "personal injury" includes "psychiatric impairment beyond mere shame and humiliation"). And in some statutory contexts, courts have inferred from the coupling of the term "personal injury" with terms like "wrongful death" that Congress intended to convey the narrower understanding of personal injury, thereby excluding claims for emotional distress or reputational injury alone. *See, e.g.*, *In re Gawker Media LLC*, 571 B.R. 612, 620-25 (S.D.N.Y. Bankr. 2017) (applying the narrow understanding of personal injury to the phrase "personal injury tort or wrongful death" as used in 28 U.S.C. § 157(b)(2)(B)).

Although the FTCA and the Westfall Act similarly couple "personal injury" and "death," it is clear from the structure of the FTCA and its exceptions that Congress did not understand "personal injury" to be generally limited to physical harm and psychiatric impairment in this context. *See* 28 U.S.C. § 1346(b)(2) (requiring a showing of "physical injury or the commission of a sexual act" for incarcerated felons to bring a suit for "mental or emotional injury"); *id.* § 2680(h) (providing express exceptions for, among other things, claims arising out of "malicious

therefore considered to result from an invasion of the plaintiff's personal legal rights, other than a breach of contract, causing harms "such as pain and suffering, emotional distress, harm to reputation, or other consequential damages." *United States v. Burke*, 504 U.S. 229, 239 (1992) (characterizing these injuries as "traditional harms associated with personal injury"). Applying these principles to the meaning of the term "personal injuries" as used in the Tax Code, the Supreme Court has held that there can be "[n]o doubt" that a statutory claim for employment discrimination "could constitute a 'personal injury' . . . if the relevant cause of action evidenced a tort-like conception of injury and remedy." *Id.*[9] And consistent with that view, the Supreme Court has recognized that civil rights statutes "defin[ing] a new legal duty" while "authoriz[ing] the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach" of that duty through a private damages suit "sound[] basically in tort." *Curtis v. Loether*, 415 U.S. 189, 195 (1974); *accord Goodman*, 482 U.S. at 660-64.

In contrast to *Rivera*'s categorical distinction between tort claims and discrimination claims, the Supreme Court's decisions in *Burke* and *Curtis* thus reflect a more functional conception of personal injury and tort liability that turns on the nature of the harm suffered by the plaintiff and the available forms of relief. *See Burke*, 504 U.S. at 237 n.7 (explaining that "the concept of a 'tort' is inextricably bound up with remedies—specifically damages actions"). Under

---

prosecution, abuse of process, libel, [or] slander"); *Birnbaum v. United States*, 588 F.2d 319, 322 (2d Cir. 1978) (explaining that a personal injury can result under the FTCA even when the plaintiff was not "touched physically" and "the sole damage claim [is] mental suffering").

[9] In *Burke*, the Supreme Court concluded that Title VII, prior to its 1991 amendments authorizing compensatory damages, did not "redress[] a tort-like personal injury within the meaning of [26 U.S.C.] § 104(a)(2) and the applicable regulations." 504 U.S. at 241 (noting that prior to the 1991 amendments, Title VII's "sole remedial focus [was] the award of back wages"). As noted, the Westfall Act's operative text, preamble, and legislative history similarly suggest that Section 2679(b)(1)'s requirements are to be interpreted consistent with principles of tort law. *See Smith*, 499 U.S. at 166 (explaining that the Westfall Act applies "in appropriate tort cases").

that latter approach, what the Supreme Court has characterized as the "traditional harms associated with personal injury," *id.* at 239, fit well within the broad range of compensatory damages, including for emotional distress, available under the NYCHRL.  *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, No. 09 Civ. 1251 (DAB), 2015 WL 13699239, at *2 (S.D.N.Y. Mar. 25, 2015) (explaining that under the NYCHRL, "[v]ictims of employment discrimination are entitled to damages to 'make the victim whole for injuries suffered on account of unlawful employment discrimination'" (quoting *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998))).  Sherrod maintains that under these principles, Imhof's NYCHRL claims—which seek broad measures of compensatory damages, including for emotional distress and consequential harms,[10] aimed at redressing violations of his personal right to be free from unlawful discrimination—readily qualify as tort claims for personal injury under the Westfall Act.  Sherrod Supp. Br. at 2-3.

In this context, however, determining whether Imhof's NYCHRL claims are for personal injury is not as straightforward as applying the general tort law principles reflected in legal dictionaries and cases like *Burke* and *Curtis*.  That is so because the Second Circuit's decisions in *Birnbaum v. United States*, 588 F.2d 319 (2d Cir. 1978) and *Devlin v. United States*, 352 F.3d 525 (2d Cir. 2003) suggest a different analysis for interpreting the meaning of personal injury for purposes of the Westfall Act.  In *Birnbaum*, the Second Circuit held that a claim falls within the definition of the FTCA's identical term "personal injury," 28 U.S.C. § 1346(b)(1), "only . . . if there was a 'personal injury' *as defined by state law*."  588 F.2d at 322 (emphasis added).  Thus, in determining whether the plaintiff in that case had asserted a cause of action cognizable under

---

[10] Among other things, Imhof seeks "damages for loss of opportunity, damages related to loss of pension payments due to [Imhof's] demotion, emotional distress damages, loss of annual leave, commuting costs, legal fees and any other relief the Court deems appropriate."  *E.g.*, Am. Compl. ¶ 144.

the FTCA, the Second Circuit looked to how New York law would define the term personal injury and ultimately held that "New York recognizes as 'personal injury' mental suffering that results from a known category of tort." *Id.*

The Second Circuit expanded on *Birnbaum*'s approach in *Devlin*. That case involved a negligence claim against employees of the United States Postal Service's Personnel Office for failing to file Designation of Beneficiary forms with the correct office, resulting in a later denial of life insurance proceeds. *See Devlin*, 352 F.3d at 527-28. On appeal, the Second Circuit considered whether the claim fell within Section 1346(b)(1) of the FTCA as a claim for "injury or loss of property," a question that the court explained could be answered either by considering the law of the state where the claim arose (the "state-incorporation" approach) or by looking to the general common law of torts (the "uniform definition" approach). *Id.* at 530-34. Under the uniform definition approach, the court explained, "in order to determine whether there exists an 'injury or loss of property,' [a court] must examine whether [the plaintiff's] claim seeks to vindicate an interest that is given protection by the general common law of torts." *Id.* at 538. Under the state-incorporation approach, by contrast, the relevant inquiry "becomes whether a person's interest . . . is a property interest that is protected by the tort law of [the relevant state]." *Id.* at 542 (emphasis omitted). While suggesting that it favored the state-incorporation approach and acknowledging that *Birnbaum*'s adoption of that approach was likely controlling law in this Circuit, the Second Circuit in *Devlin* stopped short of formally adopting that approach for purposes of the FTCA's "injury or loss of property" prong. *See id.* at 531-34. Instead, the Second Circuit held that under either approach, the plaintiff's negligence claim involving lost insurance proceeds was one for "injury or loss of property." *Id.* at 534.

Strictly speaking, the relevant question here is not whether Imhof's NYCHRL claims are for personal injury within the meaning of the FTCA as such, 28 U.S.C. § 1346(b)(1), but whether they are claims for personal injury under the later-enacted Westfall Act, *id.* § 2679(b)(1). Nevertheless, "[w]hen Congress borrows language from one statute and incorporates it into a second statute, the language of the two acts ordinarily should be interpreted the same way." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 295-96 (3d Cir. 2005) (citing, *inter alia*, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-84 (1992)). Here, neither party has presented any reason to treat the meaning of "personal injury" as used in the Westfall Act differently than the meaning of "personal injury" as used in the FTCA proper. *Cf. Bello v. United States*, 93 F. App'x 288, 289-91 (2d Cir. 2004) (summary order) (applying the same state-law approach to the Westfall Act's scope-of-employment prong that applies under the FTCA). This Court is therefore constrained to follow *Birnbaum*'s state-incorporation approach in assessing the meaning of the term personal injury for purposes of the Westfall Act. *See Birnbaum*, 588 F.2d at 322; *Devlin*, 352 F.3d at 534. Accordingly, the general common law principles reflected in cases like *Burke* do not, as such, provide a compelling basis for the Court to depart from *Rivera*'s view that NYCHRL claims are beyond the scope of the Westfall Act. This issue, instead, turns on whether Imhof's NYCHRL claims are for personal injury as *New York law* would understand that concept.

The parties have provided little, if any, briefing concerning whether New York law would consider Imhof's NYCHRL claims to be claims for personal injury, or even tort claims at all. But "[h]istorically, the phrase 'personal injuries' has received broad interpretation by the [New York] state courts." *McCormack v. Bloomfield S.S. Co.*, 399 F. Supp. 488, 490 (S.D.N.Y. 1974). Under

New York General Construction Law Section 37-a,[11] which the Second Circuit has cited favorably for purposes of the state-incorporation approach, personal injury "includes libel, slander and malicious prosecution; also an assault, battery, false imprisonment, or other actionable injury to the person either of the plaintiff, or of another."   N.Y. Gen. Constr. Law § 37-a; *see Devlin*, 352 F.3d at 542 n.21 (characterizing Section 37-a as a "helpful statutory definition").   The *Birnbaum* court observed that New York courts at the time had interpreted Section 37-a to "include under the rubric of personal injury: mental distress . . . and, in general, 'every variety of injury to a person's body, feelings or reputation.'"   588 F.2d at 322 n.7 (quoting *Bonilla v. Reeves*, 267 N.Y.S.2d 374, 381 (N.Y. Sup. Ct. 1966)); *see Gordon v. Siben & Siben*, 558 N.Y.S.2d 439, 442 (2d Dep't 1990) (same).   Consistent with that broad view, the New York Court of Appeals has treated statutory claims for invasion of privacy under the New York Civil Rights Law as claims for personal injury on the ground that "if the right is personal its invasion must be a personal injury."   *Riddle v. MacFadden*, 94 N.E. 644, 645 (N.Y. 1911) (applying a similar definition of personal injury contained in Section 37-a's predecessor statute).

Under these principles, there is a strong argument that Imhof's NYCHRL claims, which aim to redress alleged violations of his personal right to be free from unlawful discrimination and seek emotional distress damages, should be considered claims for personal injury under New York law.  *See Mills v. Monroe County*, 451 N.E.2d 456, 458-59 (N.Y. 1983) (explaining that an action under the New York human rights laws may be brought to vindicate the "private or personal rights

---

[11] The portion of the General Construction Law containing Section 37-a "is applicable to every [New York] statute unless its general object, or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended."  N.Y. Gen. Constr. Law § 110.

of the plaintiff" to be free from unlawful discrimination); *accord Goodman*, 482 U.S. at 661 (describing unlawful discrimination as "a fundamental injury to the individual rights of a person").

In practice, however, courts applying New York law have reached differing conclusions with respect to whether statutory human rights claims can be considered claims for personal injury. Favoring Sherrod's position, courts have treated statutory human rights claims as claims for "injury to person" for purposes of New York's survivorship statute, a term that is reflected in Section 37-a's general definition of personal injury. *See, e.g.*, *Saint-Jean v. Emigrant Mortg. Co.*, No. 11 Civ. 2122 (SJ), 2022 WL 843836, at *3 (E.D.N.Y. Mar. 22, 2022) ("Claims under the [New York State Human Rights Law] and NYCHRL are claims of 'injury to person or property.'"); *Mendoza v. State Div. of Hum. Rts.*, 424 N.Y.S.2d 447, 449 (1st Dep't 1980) (similar). Courts have also suggested that such claims are subject to New York Civil Practice Law & Rules ("N.Y. C.P.L.R.") Section 1401, which allows claims for contribution among "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death." *Mathis v. United Homes, LLC*, 607 F. Supp. 2d 411, 429-30 (E.D.N.Y. 2009) (quoting N.Y. C.P.L.R. § 1401).

Yet in other contexts, courts applying New York law have not treated discrimination claims as claims for personal injury, or even as tort claims at all. For instance, some courts have declined to treat discrimination claims as claims for personal injury under N.Y. C.P.L.R. Section 4545, which modifies New York's common law collateral source rule in certain tort cases. *See Equal Emp. Opportunity Comm'n v. Yellow Freight Sys., Inc.*, No. 98 Civ. 2270 (THK), 2001 WL 1568322, at *2 (S.D.N.Y. Dec. 6, 2001); *Greenway v. Buffalo Hilton Hotel*, 951 F. Supp. 1039, 1066-67 (W.D.N.Y. 1997), *aff'd as modified*, 143 F.3d 47 (2d Cir. 1998). Similarly, at least one court has held that discrimination claims under New York's human rights laws are not claims for

personal injury for purposes of N.Y. C.P.L.R. Section 4111, which requires an itemized verdict following a jury trial in "actions to recover damages for 'personal injury, injury to property or wrongful death.'" *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 190 (E.D.N.Y. 2006) (quoting N.Y. C.P.L.R. § 4111), *aff'd*, 531 F.3d 127 (2d Cir. 2008). And outside the statutory context, New York courts have held that discrimination claims under the state's human rights laws do not give rise to tort liability at all on the ground that such claims represent a statutory cause of action not previously recognized under New York's common law of torts. *See Kimmel v. State*, 906 N.Y.S.2d 403, 407 (4th Dep't 2010) (agreeing that the trial court "improperly characterized" a suit under the state human rights law "as a 'tort action'"), *aff'd*, 80 N.E.3d 370 (N.Y. 2017); *Monsanto v. Elec. Data Sys. Corp.*, 529 N.Y.S.2d 512, 514 (2d Dep't 1988) ("A discrimination claim under the Human Rights Law is an action created by statute, which did not exist at common law, and therefore cannot give rise to tort liability."). Those latter decisions in particular appear to support the Second Circuit's categorical distinction in *Rivera* between tort claims and discrimination claims under New York State's and New York City's human rights laws.

When faced with seemingly conflicting treatments of a claim under the state-incorporation approach, the Second Circuit has explained that "it would not do to throw a dart at the [relevant state's] case reports and use whatever definition of [personal injury] is thereby encountered." *Devlin*, 352 F.3d at 541 (citing *De Sylva v. Ballentine*, 351 U.S. 570 (1956)). Courts, instead, are directed to "focus on that aspect of state law that is most relevant to the purposes of the federal statute at issue." *Id.* In other words, "to decide the state meaning of a federally used phrase, federal courts should be guided by those state cases that deal with the circumstances akin to those at play in the federal statute." *Id.* Under that approach, the most closely analogous context in which New York courts have construed the meaning of personal injury arises under state statutes

that, similar to the Westfall Act and the FTCA, govern the presentation of tort actions against state and municipal entities and their employees.

The first such statute is the New York Court of Claims Act.  Originally enacted in 1929, the Court of Claims Act now provides that the state "waives its immunity from liability and action and . . . assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations."  N.Y. Ct. Cl. Act § 8.  Similar to the FTCA, the Court of Claims Act thus effectively "waive[s] [the state's] immunity from liability for the torts of its officers and employees."[12]  *Bardi v. Warren Cnty. Sheriff's Dep't*, 603 N.Y.S.2d 90, 92 (3d Dep't 1993); *see Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004) ("The FTCA was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances." (internal quotation marks omitted)).  In doing so, however, the Court of Claims Act imposes notice-of-claim and timeliness requirements, including a default ninety-day period applicable to any "claim to recover damages for injuries to property or for personal injuries caused by the intentional tort of an officer or employee of the state while acting as such officer or employee," N.Y. Ct. Cl. Act § 10(3-b), and a catchall six-month default period for "any other claim not otherwise provided for," *id.* § 10(4).

The second relevant statute is the New York General Municipal Law.  Prompted in part by judicial decisions "extending [the Court of Claims Act's] waiver to all civil divisions of the State," the state legislature enacted the General Municipal Law to provide "limitations on time and procedure for maintaining actions against" government entities and to protect their employees

---

[12] The waiver of immunity embodied in the Court of Claims Act, however, extends beyond tort claims.  *See* N.Y. Ct. Cl. Act §§ 8, 10.

against the threat of civil liability. *Bender v. N.Y.C. Health & Hosps. Corp.*, 345 N.E.2d 561, 563 (N.Y. 1976). Like the Westfall Act, the General Municipal Law contains provisions mitigating the risk that government employees will face ruinous liability for acts taken within the scope of their employment. *See, e.g.*, N.Y. Gen. Mun. Law § 50-j(2)-(3) (barring state-court private actions against municipal correctional workers for acts taken within the scope of their employment and requiring such claims to be brought against the city instead)[13]; *id.* § 50-k(2)-(3) (requiring New York City to "provide for the defense" of city employees named as defendants in civil suits based on acts they took within the scope of their employment and to "indemnify and save harmless" those employees). The General Municipal Law also regulates the presentation of tort claims against local government entities and their employees, barring claims "for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of" the entity or its employees unless the plaintiff serves a timely notice of claim. *Id.* § 50-i(1)(a).

In construing the General Municipal Law, "[t]he [New York] Court of Appeals [has] unequivocally stated that [state human rights law] claims are not tort actions" or claims for personal injury. *Shaw*, 2017 WL 5634122, at *5 (emphasis omitted). In *Margerum v. City of Buffalo*, 28 N.E.3d 515 (N.Y. 2015), the Court of Appeals considered whether a claim for discrimination against a city under the state human rights law—which resulted in a substantial award of economic and emotional distress damages following a bench trial—should have been dismissed for failure to comply with the General Municipal Law's notice-of-claim requirements. As noted, General Municipal Law Section 50-i requires a notice of claim in civil suits "for personal

---

[13] The General Municipal Law contains two Sections 50-j. The Court here refers to the provision titled "Civil actions against correction employees."

injury, wrongful death or damage to real or personal property." N.Y. Gen. Mun. Law § 50-i(1). In turn, Section 50-e provides requirements concerning the form and contents of notices of claim that apply in certain cases "founded upon tort." *Id.* § 50-e(1)(a). Applying those provisions to the plaintiffs' discrimination claims, the Court of Appeals concluded that "[h]uman rights claims are not tort actions under section 50-e and are not personal injury, wrongful death, or damage to personal property claims under section 50-i." *Margerum*, 28 N.E.3d at 518-19 (explaining that "the General Municipal Law does not encompass a cause of action based on the Human Rights Law"). This holding of the Court of Appeals is consistent with the majority approach of courts that have considered whether claims under New York's human rights laws are tort claims involving a personal injury or injury to property for purposes of the General Municipal Law. *See, e.g.*, *Picciano v. Nassau Cnty. Civ. Serv. Comm'n.*, 736 N.Y.S.2d 55, 60-61 (2d Dep't 2001) (explaining that because human rights claims arise under "a new statutory cause of action which was not cognizable at common law," such claims do not fall within statutes "limited to claims for damages for personal injury, wrongful death, or injury to property"); *Sebastian v. N.Y.C. Health & Hosps. Corp.*, 634 N.Y.S.2d 114, 114 (1st Dep't 1995) (holding that statutory discrimination claims do not fall under the language of statutes limited to "personal injury, wrongful death, or damage to property claim[s]").[14]

---

[14] The *Margerum* court did not acknowledge the tension between its holding that a discrimination claim under the state human rights laws is not a "tort" under General Municipal Law Section 50-e and its prior decision in *Mills*, which held that a notice of claim was required for human rights claims subject to New York's County Law Section 52, a provision that incorporates Section 50-e. *See Shaw*, 2017 WL 5634122, at *5 (finding it "difficult . . . to square" *Margerum* and *Mills*). Nor did the *Margerum* court address the tension between the reasoning of the cases it relied on, like *Picciano*, and the Court of Appeals's earlier decision in *Riddle*, which held that a violation of the Civil Rights Law's statutory right to privacy—which, like discrimination under the human rights laws, did not exist as a common law tort in New York—*does* give rise to a personal injury. *See Riddle*, 94 N.E. at 645. The *Margerum* court also did not consider the

The *Margerum* court's holding that human rights claims are neither tort claims nor claims for personal injury for purposes of the General Municipal Law is also consistent with courts' interpretations of the Court of Claims Act.  As discussed, Section 10 of the Court of Claims Act creates notice-of-claim requirements and limitations periods applicable to tort and certain other claims brought against the state based on acts by state employees acting within the scope of their employment.  *See* N.Y. Ct. Cl. Act § 10.  As relevant here, Section 10(3-b) imposes those procedural requirements in the context of "[a] claim to recover damages for injuries to property or for personal injuries caused by the intentional tort of an officer or employee of the state while acting as such officer or employee."  *Id.* § 10(3-b).  Section 10(4), meanwhile, provides a catchall provision for "any other claim not otherwise provided for by this section," subjecting those claims to more generous timeliness requirements than Section 10(3-b).  *Id.* § 10(4).  Critically, in determining whether a discrimination claim under New York's human rights laws was subject to Section 10(3-b) as an "intentional tort" claim for "personal injury" or the less stringent Section 10(4) as "any other claim," the New York Court of Claims has held that such a claim must be treated under the latter provision because "an action brought pursuant to the Human Rights Law is a statutory cause of action and not a traditional common law tort."  *Clauberg v. State*, 856 N.Y.S.2d 827, 832 (N.Y. Ct. Cl. 2008); *accord Meyer v. Off. of Mental Health*, 88 N.Y.S.3d 905, 906 (2d Dep't 2018) (treating such claims under Section 10(4)).

Sherrod's argument that *Margerum*'s approach merely reflects a policy-based determination that human rights claims should not be subject to notice-of-claim requirements, Tr. at 15:2-7, is unpersuasive.  It is true, as Sherrod points out, that the *Margerum* court ended its

---

definition of personal injury provided in General Construction Law Section 37-a, which generally encompasses claims for emotional distress.

analysis of the General Municipal Law by observing that it did not "perceive any reason to encumber the filing of discrimination claims." 28 N.E.3d at 519. But *Margerum* did not disturb the Court of Appeals's earlier decision in *Mills*, where the court squarely rejected the view that "notice requirements are antithetical to the policy underlying the civil rights laws." 451 N.E.2d at 457. Instead, what matters is text: when a statute regulating the presentation of civil claims against government entities or their employees refers only to personal injury claims and other forms of tort, then human rights claims typically are not covered as a matter of state law; but when the relevant statute uses more expansive text, then human rights claims generally are included. *See Williams v. NYC Health & Hosps.*, 88 N.Y.S.3d 847, 854 (N.Y. Sup. Ct. 2018) (explaining that "whether a notice of claim is required against a particular municipal entity turns upon whether the language of the notice of claim provision" is limited to claims "involving personal injury, wrongful death or property damages; or is broader").

For example, both before and after the Court of Appeals decided *Margerum*, courts have held that New York's County Law Section 52—which creates a notice-of-claim requirement applicable to civil suits "for damage, injury or death, or for invasion of personal or property rights, of every name and nature" resulting from "any misfeasance, omission of duty, negligence or wrongful act"—is broad enough to reach statutory human rights claims. *See Styles v. Westchester County*, No. 18 Civ. 12021 (VB), 2020 WL 1166404, at *6 (S.D.N.Y. Mar. 10, 2020).[15]  Courts have likewise held that Town Law Section 67 applies to human rights claims because that provision "is not limited to claims for damages for personal injury, wrongful death, or injury to

---

[15] At least one court has expressed doubt that County Law Section 52—given that it incorporates General Municipal Law Section 50-e and applies only to claims resulting from "any misfeasance, omission of duty, negligence or wrongful act"—is in fact broader than General Municipal Law Section 50-i. *See Shaw*, 2017 WL 5634122, at *5 & n.4.

property," but instead requires a notice of claim for "any claim . . . for damages for wrong or injury to person or property." *Picciano*, 736 N.Y.S.2d at 61; *see Arnold v. Town of Camillus*, 202 N.Y.S.3d 839, 843 (4th Dep't 2023) (holding that Town Law Section 67 reaches statutory human rights claims because that provision includes claims for any "wrong to person" and is not expressly limited to tort claims). Similarly, human rights claims fall under Public Authorities Law Section 1276(1), which extends to "every action against the [Metropolitan Transit Authority] for damages," but not Section 1276(2) of that statute, which only reaches actions "founded on tort." *Shaw*, 2017 WL 5634122, at *1, *4. It is clear, therefore, that in the context of statutes regulating the presentation of tort claims against government entities and their employees, New York law considers claims for discrimination under the state and city human rights laws to be categorically distinct from claims for "personal injury" or "tort."

* * *

In sum, the Second Circuit has stated that the Westfall Act does not apply to claims under the NYCHRL. *See Rivera*, 157 F.3d at 105 (explaining that the Westfall Act "applies only to tort claims, not to discrimination claims under the [New York State and New York City] Human Rights Laws"). And under the state-incorporation approach adopted by the Second Circuit in *Birnbaum*, it is apparent that New York law does not consider a statutory employment discrimination claim under the human rights laws to be a claim for "'personal injury' . . . that results from a known category of tort" in the context of statutes governing the presentation of tort claims against government entities and their employees. *Birnbaum*, 588 F.2d at 322.

Because it is not clear that the New York Court of Appeals's exclusion of such discrimination claims from the definitions of "personal injury" and "tort" is beyond the "permissible range of meanings of [those terms]," *Devlin*, 352 F.3d at 534 n.9, the Court treats that

interpretation as conclusive for purposes of the Second Circuit's state-incorporation approach.[16]
*Cf. Burke*, 504 U.S. at 247-48 (Souter, J., concurring) (suggesting that a violation of Title VII's
ban on employment discrimination could be viewed as the breach of a "contractual term implied
by law," rather than as a tort giving rise to personal injury, and noting that "good reasons tug each
way").  The Court therefore defers to the Second Circuit's view in *Rivera* that the Westfall Act
does not apply to discrimination claims under the NYCHRL and holds that Sherrod is not entitled
to immunity under the Westfall Act or to substitution of the United States.

## IV.  Conclusion

For these reasons, Sherrod's motion for summary judgment is denied.  The Clerk of Court
is respectfully directed to close Docket Number 105.

SO ORDERED.

Dated: July 25, 2025
New York, New York

JOHN P. CRONAN
United States District Judge

---

[16] Although the *Margerum* court did not provide a detailed reason for that exclusion, this
Court does not understand *Margerum*'s treatment of discrimination claims under the human rights
laws as categorically distinct from personal injury claims to be based on the absence of physical
bodily injury or psychiatric impairment under the narrow definition of personal injury discussed
*supra* n.8, which *would* be inconsistent with the Westfall Act and the FTCA.  *See Ruggiero v.
Phillips*, 739 N.Y.S.2d 797, 799-800 (4th Dep't 2002) (applying General Municipal Law Section
50-i(1) to claims for libel).